# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civ. Action No. 1:20-cv-03650

**ANITA BERTISEN**, an individual, and
**JASPER BERTISEN**, an individual,

      Plaintiffs,

v.

**THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY**, a Connecticut corporation,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

COME NOW Anita Bertisen and Jasper Bertisen (collectively, the "Bertisens"), by and through counsel, and allege and aver as follows for their Complaint:

### INTRODUCTION

1.    This case arises out of Defendant The Travelers Home and Marine Insurance Company ("Defendant" or "Travelers")'s breach of an insurance contract and failure to adhere to the applicable common law and industry standard of care as required by insurers doing business in the State of Colorado.

2.    Insurance is a unique product that is purchased not for commercial advantage, but for peace of mind; for protection against financial calamity and uncertainties. An insurance company's promise of security has real value. Those

fortunate enough to never experience loss, and therefore to never collect a penny from their insurers, spent their money for the sole purpose of security and peace of mind.

3.    The insurance contract is also different from most ordinary contracts because it requires sequential performance. In a typical contract, if one party fails to perform, the other party can procure a substitute performance and sue for any added cost. If, for example, a property owner hires a contractor to renovate the property and contractor fails to show, the property owner can refuse to pay, hire another contractor, and, if he pays the second a higher price, sue the first contractor for the extra. But if a property owner suffers a hail and wind storm and his insurance company fails to pay the claim, it is too late for the property owner to buy alternate insurance.

4.    When insurers delay or deny payment of covered benefits without a reasonable basis, they contravene the purpose of insurance as the insured fails to secure the peace of mind purchased through the insurance contract. In Colorado, insurance companies are subject to special remedies if they fail to honor their promises. In this action, Plaintiffs seek recovery of tort damages resulting from the bad faith breach of an insurance policy and two times the amount of covered benefits unreasonably delayed or denied, attorney fees and costs pursuant to § 10-3-1116(1), C.R.S.

## **JURISDICTION AND VENUE**

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States. The Bertisens are Colorado residents.

Travelers is an insurance company domiciled in the State of Connecticut with its main office in Hartford, Connecticut.

6.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and omissions giving rise to this Complaint took place in this judicial district. The Bertisens purchased an insurance policy, Policy No. 0CHR34-996023717-633-1 (the "Policy"), covering their home located at 25704 Bristlecone Court, Golden, Colorado 80401 (the "Property"). The Policy was entered into in Colorado, and the events described in this Complaint, including the torts committed by Travelers, occurred in Colorado.

## PARTIES

7.        The Bertisens are individuals residing in Colorado.

8.        Travelers is an insurance company that, at all relevant times, was licensed to conduct the business of insurance in Colorado and performs substantial business within the State of Colorado.

## GENERAL ALLEGATIONS

9.        The Bertisens reallege each and every allegation contained in this Complaint as if fully set forth herein.

10.        The Property consists of the Bertisen's multi-story residential home and outdoor deck. The roof of the Bertisens' home is over 4,500 square feet, and consists of roof tiles; their home has stucco siding and the windows have wooden frames.

11.     The Policy is a contract of insurance where in exchange for timely payments called "premiums," Defendant will provide insurance coverage for the Property on a replacement cost value ("RCV") basis.

12.     Under the Policy, if the Property is damaged by a covered cause of loss, such as wind or hail, then Defendant will pay the amount it takes to replace the damaged property, less the applicable deductible.

13.     The Bertisens made timely premium payments and otherwise complied with their contractual obligations under the Policy.

14.     On May 8, 2017, a severe hail storm hit Jefferson County, Colorado.

15.     The May 8, 2017 storm caused significant damage to the Property's roof, skylights, stucco, windows, deck, and caused interior leaks in the dining room, study, and master bath.

16.     Anita Bertisen reported the loss to Travelers on or about May 12, 2017.

17.     Travelers assigned claim number SNY6214001H to the May 8, 2017 hail loss, and adjuster Bradlee Waddell to the file.

18.     Mr. Waddell inspected the Property on May 26, 2017. Mr. Waddell claimed that he did not see major damage to the roof other than dents to metal components and the skylights.

19.     Upon information and belief, Mr. Waddell took photographs of the roof of the Property that included damaged tiles.

20.     Mr. Waddell did not mention to Mrs. Bertisen that he observed damaged tiles on the roof.

4

21.     Mr. Waddell did mention that concrete roofs were "indestructible" and would "last forever."

22.     The Bertisens did not retain an independent inspector to review the damage to the roof at this time because they understood that Travelers was adjusting their claim and relied on Travelers to do so in good faith.

23.     On May 30, 2017, Mr. Waddell issued an estimate of $11,131.01 RCV to repair damage to the Property, and of $1,586.68 for contents damage.

24.     That initial estimate did not include any amounts to replace damaged roof shingles, the wood damage to the window frames, the stucco siding, or any components of the roof other than soft metals and the skylights.

25.     Travelers' initial estimate was nowhere near the actual cost necessary to remedy the damage to the Property caused by the May 8, 2017 storm.

26.     Travelers knew or should have known that its estimate was not a reasonable investigation or assessment of the cost to remedy the damage to the Property caused by the May 8, 2017 storm.

27.     The Bertisens immediately arranged for the skylights to be replaced.

28.     In early August, there was heavy and prolonged rain. After Mrs. Bertisen arrived home from a work-related trip, she found water running down from the ceiling and wall in three separate locations in her home.

29.     Prior to the May 8, 2017 hailstorm, the Bertisens had never observed interior leaking in their home.

30.     The interior leaks were caused by the May 8, 2017 hail damage to the Property.

31.     In October of 2017, the Bertisens hired Bryan Shiltz of Elevation Restoration to inspect the roof and identify the cause of the leaks.

32.     On October 14, 2017, Mrs. Bertisen submitted receipts to recover depreciation for the skylight replacements and other items.

33.     The Bertisens paid more than Travelers estimated to repair the skylights ($1,872.98 exclusive of overhead and profit), to replace a furniture cover, and to replace furniture seating.

34.     Travelers did not respond to those pricing discrepancies.

35.     Elevation Restoration prepared an estimate dated November 2, 2017 and submitted it to Travelers, for remediation of the May 8, 2017 loss, in the amount of $101,311.31. That estimate did not include line items for the interior damage or contents.

36.     On November 3, 2017, adjuster TJ Barr and his manager Cintrina Wickham came to do a second inspection of the hail damage to the Property.

37.     During the November 3, 2017 reinspection, Mr. Barr and Ms. Wickham required the Bertisens to open a second claim for the interior water damage.

38.     Mr. Barr and Ms. Wickham told Mrs. Bertisen that furniture damaged by the interior water leaks would not be covered.

39.     Mr. Barr informed Mrs. Bertisen that the damage to the roofing tiles was caused by the contractors who replaced the skylights walking on the roof. He advised that Travelers would send an engineer to inspect the roof.

40.    Mrs. Bertisen informed Mr. Barr that she did not think that the contractors damaged the roof as they used ladders to access the skylight locations and did not walk directly on the tiles. The roofing tiles were also damaged across the entire roof and not only in locations where the contractors would have walked.

41.    Travelers assigned a separate claim number, H5M6216001H for its adjustment of the damage to the interior of the Property, including duplicate application of the deductible.

42.    Upon information and belief, separating the interior and exterior damage into separate claims was contrary to Travelers' policies and procedures, relevant claims manuals.

43.    On November 3, 2017, Travelers, acting through Mr. Waddell, generated a revised estimate of $22,314.60 RCV to repair damage to the Property, including contents, for claim number SNY6214001H.

44.    That November 3, 2017 estimate still did not include any amounts to replace damaged roof shingles, or any components of the roof other than soft metals and the skylights.

45.    That November 3, 2017 estimate also did not include any revisions to the amount for the skylight repairs, even though Mrs. Bertisen had submitted a bill for $1,872.98 (exclusive of overhead and profit) for that cost, or to other items for which Mrs. Bertisen had submitted invoices showing higher costs.

46.    The November 3, 2017 estimate was nowhere near the actual cost necessary to remedy the damage to the Property caused by the May 8, 2017 storm.

7

47.     Travelers knew or should have known that its estimate was not a reasonable investigation or assessment of the cost to remedy the damage to the Property caused by the May 8, 2017 storm.

48.     Upon information and belief, Travelers was attempting to "low ball" Plaintiffs' claim by offering amounts substantially less than those ultimately awarded to Plaintiffs in appraisal for covered repairs.

49.     Upon information and belief, Travelers added items to its November 3, 2017 estimate to entice the Bertisens to accept the estimate even though it was insufficient to cover the damage to the roof.

50.     After the inspection on November 3, 2017, Mrs. Bertisen and Mr. Barr spoke over the phone. Mr. Barr informed Mrs. Bertisen that Travelers was of the opinion that cracks and chips to the roofing tiles on the Property were from stress cracks and not from hail damage. He advised that Travelers would not hire an engineer to inspect the damage.

51.     After the November 3, 2017 inspection, the Bertisens began to suspect that Travelers did not intend to adjust their claim in good faith. The Bertisens then hired Elevation Restoration to complete patch repairs of the roof where it was leaking into the interior so that damages were not aggravated given the coming winter.

52.     Mr. Barr left for a vacation on or about November 4, 2017.

53.     Elevation Restoration patched the roof in December 2017. The Bertisens paid $9,107.05 for those repairs.

54.     When Elevation Restoration began repairs to the roof, they found that the tar paper underlaying the tiles was cracked from the hail impacts. Elevation Restoration

therefore removed the tar paper and installed ice and water shield, synthetic underlayment, new flashing, and re-installed the tiles.

55.    Mrs. Bertisen emailed Mr. Barr on November 6, 2017, to request that he reconsider his assessment that the roofing tiles were not damaged by hail. Mrs. Bertisen attached photographs of the damage. She explained that the water damage to the interior was new after the hail storm. Mrs. Bertisen urged Travelers to reconsider its assessment that chips and cracks to the roofing tiles were not caused by hail.

56.    After reviewing Mrs. Bertisen's email and the estimates provided from Elevation Restoration, Travelers refused to issue payment for substantial additional amounts.

57.    As a result of Travelers' decision to stand by its estimate and its refusal to pay substantial additional amounts, on November 17, 2017, Mrs. Bertisen submitted a complaint to the Colorado Department of Regulatory Agencies, Division of Insurance.

58.    On January 19, 2018, Travelers, acting through Mr. Gabriel Duarte, generated an estimate of $4,058.26 RCV for claim number H5M6216001H.

59.    The Bertisens' contractor, Bryan Shiltz of Elevation Restoration, requested that Travelers reinspect the Property on March 22, 2018, April 2, 2018, April 3, 2018, April 5, 2018, and on May 7, 2018.

60.    Travelers, acting through Mr. Gabriel Duarte and Mr. Randall C. Colson, refused each request for a reinspection.

61.    Mr. Duarte relied in part on artificial delineation of claims H5M6216001H and SNY6214001H as a basis for denying reinspection.

9

62.    Travelers adjusted other claims arising from the May 8, 2017 hail storm in the Golden, Colorado region, for which it paid some policyholders for full roof replacements.

63.    Upon information and belief, Travelers knew or should have known that a full roof replacement was warranted, but intentionally refused to adjust the Bertisens' loss accordingly.

64.    Upon information and belief, based on Travelers' refusal to adjust claim number SNY6214001H while adjusting claim number H5M6216001H, Travelers artificially delineated the interior and exterior damages using different claim numbers in order to rationalize its denial that the Bertisens' roof needed to be replaced.

65.    Upon information and belief, based on the estimates generated and Travelers' adjusters' refusals to authorize retention of an engineer and other facts discussed herein, Travelers did not set reasonable reserves and did not adjust reserve levels set based on information received from the Bertisens and their contractors.

66.    On May 7, 2018, Travelers advised the Bertisens to invoke appraisal.

67.    The Bertisens hired Ken Medina of The Roof Dr., on or about May 21, 2018.

68.    On May 23, 2018, Mr. Medina emailed Travelers an estimate for repairs needed to the roof and gutters, and advised that bids would be forthcoming for windows, stucco siding, the deck, and the interior damage. The May 23, 2018 estimate of repairs was for $120,760.92.

69.    On May 23, 2018, Mr. Medina also advised that the interior and exterior claims were the same claim and should be combined.

70.     On June 5, 2018, Mr. Medina emailed Travelers photographs of the hail damage and again requested that the two claims be combined.

71.     On June 14, 2018, Mrs. Bertisen emailed Travelers and informed them of her concerns about the interior and exterior claims being improperly combined, and taking issue with the initial inspection.

72.     On June 14, 2018, Travelers, acting through Mr. Colson, responded to Mrs. Bertisen's concerns by reiterating that the claims were being handled separately and stating that Mrs. Bertisen's contractor had included roofing items in the "not associated" interior water damage claim.

73.     On August 21, 2018, Travelers received a letter from the Bertisens demanding appraisal pursuant to the Policy, and naming their appraiser as Tony Trujillo, with C3 Group.

74.     On September 7, 2018, Travelers, acting through Nick Kern, responded to the Bertisens' appraisal demand and named their appraiser as Wayne D. Sowers, with Cunningham Lindsey.

75.     Mr. Sowers is based out of Arizona.

76.     Mr. Trujillo could not get in touch with Mr. Sowers.

77.     Travelers appointed a new appraiser, Mr. Seth McClure, with Sedgwick, on or about October 9, 2018.

78.     Mr. McClure was based out of Salt Lake City, Utah.

79.     Mr. Trujillo experienced difficulties getting in touch with Mr. McClure and scheduling proved difficult due to Mr. McClure's location.

80.    Mr. McClure hired an engineer to inspect the damage caused to the concrete tile roof by the May 8, 2017 hailstorm.

81.    The appraisers agreed that hail from the May 8, 2017 storm damaged roofing tiles on the Property.

82.    The appraisers were unable to come to an agreement on who should serve as umpire.

83.    The parties submitted petitions to Colorado District Court in Jefferson County, requesting that the court appoint an umpire. Case No. 2020CV30156. The Court appointed Mr. Scott Nunnery as umpire on March 23, 2020.

84.    Mr. Nunnery declined the appointment.

85.    Travelers petitioned for the appointment of Ms. Linda McGowan.

86.    The Court reopened the claim and appointed Ms. Linda McGowan as umpire on May 19, 2020.

87.    The parties entered into a tolling agreement dated May 8, 2020, whereby they agreed to toll the running of statutes of limitations that may otherwise apply to the claims discussed herein, during the appraisal period and for 60 days thereafter.

88.    The Bertisens timely bring the claims alleged herein.

89.    On September 3, 2020, the Bertisens and Mr. Daniel Lehmkuhlm, a Travelers Claim Professional, received a signed letter from Ms. McGowan stating that she determined the amount of loss to be $157,141.19.

90.    The Bertisens paid $75,000.00 to The Roof Dr. on September 14, 2020 as a deposit for repairs to the roof, gutters, and windows.

91.     The Bertisens' roof passed inspection on October 1, 2020.

92.     On October 13, 2020, Ms. McGowan signed an appraisal award appraising the amount of loss to be $157,141.19.

93.     On October 15, 2020, Mr. Trujillo signed off on the appraisal award setting the amount of loss to be $157,141.19.

94.     The appraisal award specifies that the amounts awarded are required to repair the hail damage from the May 8, 2017 hailstorm.

95.     As of the date of this complaint, Travelers has not issued any payment on the appraisal award.

96.     The Bertisens paid $51,236.00 to The Roof Dr. on October 22, 2020 for completion of the roof repairs.

97.     The Bertisens are still waiting for materials for the windows to come in for those repairs to be completed.

98.     The Bertisens anticipate paying an additional $25,793.00 for the windows, and additional amounts for a sliding door.

99.     Upon information and belief, Travelers does not intend to pay the full appraisal award, less the deductible, by Monday, December 14, 2020.

100.    Defendant had a duty to act expeditiously and not to create unnecessary delays, as well as not to hold the appraisal award amounts due for purposes of forcing a settlement. *Insurance Co. v. Levy*, 85 Colo. 565, 570 (Colo. 1929).

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

101.    The Bertisens reallege each and every allegation contained in this Complaint as if fully set forth herein.

102.    The Policy is a contract of insurance.

103.    Plaintiffs complied with all obligations and conditions under the Policy, or such obligations and conditions were waived by Defendant.

104.    Defendant's acts and omissions described herein constitute a breach of the Policy, including but not limited to its failure to pay benefits owed to repair or replace the damaged parts of the Property.

105.    As a direct and proximate result of Defendant's breach of the Policy, Plaintiff is entitled to damages in amounts to be proved at trial, including without limitation the amount of the benefits still owed and or/wrongfully withheld under the Policy.

## SECOND CLAIM FOR RELIEF
(Bad Faith Breach of Insurance Contract)

106.    The Bertisens reallege each and every allegation contained in this Complaint as if fully set forth herein.

107.    Under the Policy's implied covenant of good faith and fair dealing, Defendant covenanted that it would deal with Plaintiff fairly and honestly, and do nothing to impair, hinder, or injure its rights to benefits under the Policy.

108.    Through the acts and omissions described above, Defendant breached that covenant, as its conduct fell below the applicable common law and industry standards of

14

care, violated the duties of good faith and fair dealing, and constituted the tort of bad faith

breach of an insurance contract.

109.    Defendant's acts and omissions were unreasonable and Defendant knew

so.

110.    Defendant's acts and omissions were committed in disregard of Plaintiff's

reasonable expectations as an insured under the Policy.

111.    Defendant breached its duty of good faith and fair dealing through the

following unreasonable acts, among others:

a.    Depriving Plaintiff of the benefits and protections it purchased through

the Policy;

b.    Failing to adopt and implement reasonable standards for the prompt

investigation and payment of claims arising under the Policy;

c.    Refusing to timely inform Plaintiff of coverage it was entitled to under the

Policy;

d.    Placing its own interests above those of Plaintiff;

e.    Failing to acknowledge and act reasonably promptly upon

communications with respect to the claim arising under the Policy;

f.    Not attempting in good faith to effectuate prompt, fair, and equitable

settlement of claims arising under the Policy after liability has become

reasonably clear;

g.    Misrepresenting Policy provisions and coverages; and

h.    Other conduct to be revealed in discovery.

112.    As a direct and proximate result of Defendant's bad faith breach of the

Policy, Plaintiff is entitled to damages in amounts to be proved at trial.

**THIRD CLAIM FOR RELIEF**
(Violation of C.R.S. § 10-3-1115 & Relief Under C.R.S. § 10-3-1116)

113.    The Bertisens reallege each and every allegation contained in this

Complaint as if fully set forth herein.

114.    Section 10-3-1115(1) and (2), C.R.S., forbids insurers such as Defendant

from unreasonably delaying or denying payment of a claim for benefits owed to or on

behalf of any first-party claimant.

115.    Plaintiffs are a first-party claimant as that term is defined in C.R.S. § 10-3-

1115(1)(A)(I).

116.    Defendant is an entity engaged in the business of insurance.

117.    Defendant denied and/or delayed payment of first-party benefits owed to

Plaintiffs and did so without a reasonable basis within the meaning of C.R.S. § 10-3-

1115(2).

118.    Defendant's conduct fell below the applicable common law and industry

standards of care.

**WHEREFORE**, Anita Bertisen and Jasper Bertisen, respectfully request a trial by

jury to award damages as follows:

a.    For all covered benefits due under the Policy;

b.    For other compensatory economic damages as may be proved at

trial;

c.    For noneconomic damages caused by Defendant's conduct for amounts to be determined by the jury;

d.    For two times the covered benefit as permitted by § 10-3-1116(1), C.R.S.;

e.    For reasonable attorneys' fees, costs and expenses incurred herein, as permitted by § 10-3-1116(1), C.R.S.;

f.    For all pre- and post-judgment, statutory and moratory, as permitted by law; and

g.    For such other and further relief as the law permits and this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated this 14th day of December, 2020.

Respectfully submitted,

*s/Katherine E. Goodrich*
Katherine E. Goodrich
Rodney J. Monheit
MoGo LLC
2701 Lawrence Street
Suite 113
Denver, Colorado 80205
Tel: (303) 357-1317
katie@mogollc.com
rodney@mogollc.com

*Attorneys for Plaintiffs*

*Plaintiffs' Address:*
25704 Bristlecone Court
Golden, CO 80401

17