**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cv-03650-NYW-STV

ANITA BERTISEN, and
JASPER BERTISEN,

Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

Defendant.

---

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Pursuant to Fed. R. Civ. P. 56, Anita Bertisen and Jasper Bertisen (the "Bertisens"), by and through their attorneys, MoGo LLC, hereby move for partial summary judgment to confirm the appraisal award, resolving a part of their breach of contract claim, against The Travelers Home and Marine Insurance Company ("Travelers") and state the following in support:

## I. DUTY TO CONFER

Undersigned counsel hereby certifies compliance with D.C.COLO.LCivR 7.1(a) in that the parties' counsel have engaged in an ongoing discussion regarding the substance of this motion and have met and conferred.

## II. JURISDICTIONAL STATEMENT

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a). There is complete diversity between the parties. Plaintiffs are individuals domiciled in Colorado and Defendant is neither incorporated in Colorado, nor holds any principal places of business in Colorado. The amount in controversy exceeds $75,000.00.

## III. RELEVANT BACKGROUND

In May 2017, a record-breaking[1] hailstorm hammered various areas in Colorado, including the City of Golden, where the Bertisens own their single family, 4-bedroom home with finished walk-out basement and attached 3-car garage. At the time, the Bertisens insured their home with Travelers and promptly notified them of hail damage, particularly to the tiles on their roof. The parties could not agree on the amount of loss resulting from the May 8, 2017 hailstorm. Travelers initially determined that the tile roof of the property was undamaged by hail and wrote a replacement cost value ("RCV") estimate for the dwelling of $11,131.01 and paid $6,381.04 for the actual cash value ("ACV") of the estimate (after deducting the Bertisens' $1,000.00 deductible).

By November of 2017, Travelers had increased their estimate of the amount required to repair the dwelling to $20,727.92 RCV and paid another $6,381.04, but maintained that the tile roof was not damaged by hail. Still disputingTravelers' position, the Bertisens invoked their policy's appraisal provision.

[1] https://denver.cbslocal.com/2017/05/23/hail-storm-may-8-insurance/ (last accessed June 3, 2022).

On October 15, 2020, the appraisal process concluded in a signed award totaling $157,141.19 RCV, which includes replacement of the tile roof with new tiles. The appraisal panel found that there were, in fact, roof tiles damaged by the May 8, 2017 hailstorm and awarded a full roof replacement. In fact, even Travelers' appraiser agreed that there was hail damage to the Bertisens' roof and that at least some of the roofing tiles ought to be replaced. Instead of approving payment to the Bertisens for the full appraised amount, as is required under the policy, Travelers omitted payment for the roofing tiles awarded in appraisal.

Defendant denied payment of the full appraised value of the loss because it disputed that appraisers could determine causation. Defendant's position was legally untenable when it was made, but recently the Tenth Circuit Court of Appeals clarified that an insurance appraisal of the amount of loss encompasses the issue of causation. *Bonbeck v. Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1178 (10th Cir. 2021). The appraisal panel here assessed causation, determined the cause of the loss was hail, and concluded that the amount of the loss is $157,141.19. Nonetheless, Defendant has yet to pay $57,339.84 out of the award. Defendant is currently in breach of the Bertisens' insurance policy and must issue payment of the value of Plaintiffs' hail loss, as determined through appraisal.

## IV. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiffs purchased from Defendant a homeowner's insurance policy covering their property located at 25704 Bristlecone Court, Golden, Colorado 80401-8082 ("Property"), with effective dates between June 30, 2016 and June 30, 2017 ("Policy"). Policy, **Exhibit 1**.

2. On May 8, 2017, a hail storm damaged the Property ("Subject Loss"). Answer, Dkt. 11, ¶ 15.

3. The parties could not agree on the amount of the Subject Loss, so they entered into the appraisal process pursuant to the Policy's appraisal clause. Answer, Dkt. 11, ¶ 74.

4. Travelers retained Mr. Seth McClure to represent them in the appraisal process, and the Bertisens retained Mr. Tony Trujillo. Answer, Dkt. 11, ¶ 77.

5. During the appraisal, Mr. McClure hired JS Held, an engineering firm, to evaluate the Subject Loss. JS Held concluded that at least some of the Bertisens' roofing tiles were damaged by hail on May 8, 2017 and needed to be replaced. Answer, Dkt. 11, ¶ 80; JS Held Report, **Exhibit 2**, at 1, 7, 8.

6. Travelers' appraiser included removal and replacement of 29 roofing tiles in his estimate. *See* Email from McClure, **Exhibit 3**; McClure's Estimate, **Exhibit 4**, at 2.

7. Mr. Trujillo included removal and replacement of the full roof in his estimate. *See* Email from McClure, **Exhibit 3**.

8. Mr. McClure and Mr. Trujillo did not agree on the amount of the loss, so needed to engage an umpire to complete the appraisal process. They were unable to agree on an umpire. Eventually, on May 19, 2020, a judge appointed one of the individuals proposed by Travelers, Ms. Linda McGowan, to be the umpire. Answer, Dkt. 11, ¶ 85.

9. About a month before an appraisal award was signed, Umpire McGowan issued a Summary Report. No other member of the appraisal panel signed the Summary Report. Summary Report, **Exhibit 5**.

10. The Summary Report indicates that Ms. McGowan felt "that the entirety of the tile roofing should be removed and replaced. We do not believe it reasonably possible to remove and

replace only some of the tiles or to remove some areas of tiles (such as the south-facing side only) without compromising the aesthetics of the roofing." Summary Report, **Exhibit 5.**

11. On October 13, 2020, and October 15, 2020, respectively, the appraisal award was signed by the insured's appraiser (Mr. Tony Trujillo) and the umpire (Ms. Linda McGowan) for a total appraised RCV amount of $157,141.19, and an ACV of $136,297.85 ("Appraisal Award"). Answer, Dkt. 11, ¶¶ 92, 93; Appraisal Award, **Exhibit 6**.

12. The appraisal award states that the date of loss was May 8, 2017. Appraisal Award, **Exhibit 6**.

13. Mr. Trujillo agreed that the hailstorm on May 8, 2017 caused $157,141.19 in damage to the Bertisens' home. Affidavit, **Exhibit 7**.

14. Umpire McGowan agreed that the hailstorm on May 8, 2017 caused $157,141.19 in damage to the Bertisens' home, including necessitating removal and replacement of all of the roofing tiles and underlayment. Transcript of L. McGowan, **Exhibit 8**, 23:22-24 ("And based on what you saw, did you think the roof was damaged by hail?" "I do."); 63:9-10 ("So because of the May 8, 2017 hail damage, the roof needed to be replaced?" "Yes.").

15. Plaintiffs completed all of the repairs outlined in the Appraisal Award to the Property and requested reimbursement for depreciation pursuant to the Policy on April 16, 2021. Transcript of Travelers' Designated Representative, **Exhibit 9**, 114:2-4.

16. Plaintiffs' deductible is $1,000.00. Policy, **Exhibit 1**, at 2.

17. To-date, Defendant has paid $98,801.35 for the loss. Final Payment Letter, **Exhibit 10**; Defendant's Amended Answer and Affirmative Defenses to Plaintiff's Supplemental Complaint, Dkt. 50, ¶ 31, 34.

18. Defendant denied payment of all of the roofing tiles that were awarded in the appraisal (RCV $57,339.84). Partial Denial Letter, **Exhibit 11**; Defendant's Amended Answer and Affirmative Defenses to Plaintiff's Supplemental Complaint, Dkt. 50, ¶ 31, 34.

19. Defendant denied payment because it disputed the appraisal panel's finding that the cause of damage to the roof was the Subject Loss. Partial Denial Letter, **Exhibit 11**; Transcript of Travelers' Designated Representative, **Exhibit 9**, 81:2-12.

20. To-date, Travelers has not paid for a single roofing tile. Transcript of Travelers' Designated Representative, **Exhibit 9**, 118:19-21.

## V. STANDARD OF REVIEW

"Federal courts sitting in diversity jurisdiction apply federal procedural law and state substantive law." *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1203 (10th Cir. 2012). Under Fed. R. Civ. P. 56, "[s]ummary adjudication is authorized when there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law." *Foreman v. W. Freightways, LLC*, 958 F. Supp. 2d 1270, 1275 (D. Colo. 2013). What facts are material and what issues must be determined is governed by substantive law. *Id*. While the Court is to view the evidence in the light most favorable to the nonmoving party, "disputes about immaterial facts will not preclude summary judgment." *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989) (citations omitted). When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its

burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001). "The interpretation of an insurance policy, like any written contract, presents a question of law, and, therefore, is appropriate for summary judgment." *Signature Dev. Cos. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1218 (10th Cir. 2000) (citation omitted).

## VI. ARGUMENT

Travelers is in breach of the Policy because it has yet to pay the Bertisens $57,339.84 for the replacement of their roof, which was included in the Appraisal Award. Appraisal awards may only be overturned in very limited circumstances, none of which Defendant will be able to demonstrate here. The Appraisal Award was a binding adjudication of fact as to the cause and the amount of the Bertisens' loss. Travelers is essentially attempting to substitute its own findings of fact with that of the appraisal panel. It should not be permitted to do so, and the Appraisal Award should be confirmed and the full replacement value paid. This would resolve a part of the Bertisens' breach of contract claim.[2]

### A. Defendant Breached the Insurance Contract

To prevail on their breach of contract claim, Plaintiffs must prove the following elements: (1) the existence of a contract; (2) performance by Plaintiffs or some justification for nonperformance; (3) failure to perform the contract by Defendant; and (4) resulting damages to Plaintiffs. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

[2] Defendant also has yet to reimburse the Bertisens for emergency repairs, also in breach of the insurance policy.

There is no dispute here that the Policy is a contract. There is also no genuine dispute that the Bertisens performed under the Policy. Under Rule 9(c), "it suffices to allege generally that all conditions precedent have occurred or been performed." F.R.C.P. 9(c). The Bertisens alleged generally that they "complied with all obligations and conditions under the Policy." Complaint, Dkt. 1, ¶ 103. Rule 9(c) continues: "But when denying that a condition precedent has occurred or been performed, a party must do so with particularity." F.R.C.P. (9)(c); *see Anderson v. United Tel. Co.*, 933 F.2d 1500, 1505 (10th Cir. 1991) ("This special pleading requirement has been applied to conditions precedent in common law contracts claims"). In its Answer, Travelers responded that Travelers "lack [sic] knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103 and therefore denies them." Answer, Dkt. 11, ¶ 103. Because Travelers did not specifically deny the Bertisens' compliance with conditions precedent under Rule 9(c), their compliance with those terms are not an issue in the case. *See Lumbermens Mut. Ins. Co. v. Bowman*, 313 F.2d 381, 387 (10th Cir. 1963) (an insurer's general denial that its insured complied with conditions precedent does not put the question of compliance at issue in the case and "no evidence in that connection should [be] received.").

Defendant will likely argue that they have complied with the Policy. However, by not paying the Appraisal Award, Defendant is in breach. The Bertisens' damages on this component of their breach of contract claim is the value of the roofing tiles awarded in appraisal that Defendant declined to pay: $57,339.84. Statement of Undisputed Material Fact ("SUF") ¶ 18.

### B. Appraisal Awards Can Only Be Overturned Upon Clear and Convincing Evidence of Fraud, Gross Mistake, Misconduct of the Appraisers, or Failure of the Panel to Perform their Duties

Appraisals are enforceable adjudications of disputes of fact. "Although appraisal, like the arbitration remedy, is 'designed to be consistent with the public policy of discouraging litigation,' unlike the broad mandate that comes with arbitration, appraisal limits the parties to 'refer[ing] some . . . matter involving only the ascertainment of facts to selected persons for disposition." *Fireman's Fund Ins. Co. v. Steele St. Ltd. II*, No. 19-1096, 2022 U.S. App. LEXIS 289, at *16 (10th Cir. Jan 5, 2022) (quoting 15 Steven Plitt, et al., COUCH ON INSURANCE § 209:8, Westlaw (3d ed., Dec. 2021)). By submitting an insurance claim to appraisal, the parties "irrevocably exercise[] their option to determine that question as provided by the appraisal clause of the policy." *Wagner v. Phoenix Ins. Co.*, 348 P.2d 150, 152 (Colo. 1960).

Because "[a] purpose of appraisal provisions is to avoid litigation and encourage settlement," *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F.Supp.3d 1099, 1103 (D. Colo. 2015), and because "[a]lternative dispute resolution mechanisms are favored in Colorado as a convenient, efficient alternative to litigation," *City & Cty. of Denver v. Dist. Court*, 939 P.2d 1353, 1357 (Colo. 1997),[3] "every reasonable presumption will support the validity of a loss appraisal." 15 Couch on Ins. § 209:8 (3d ed. 2014); 5 New Appleman on Insurance Law Library Edition § 47.06 (2022). ("When a contract contains an appraisal clause, there is a strong presumption in favor of appraisal. Therefore, the

[3] An "alternative dispute resolution proceeding" is "a procedure for settling a dispute by means other than litigation, such as arbitration or mediation." *Black's Law Dictionary* (9th ed. 2009); *see also* 1 *Alternative Dispute Resolution* § 1:1 (3d ed. 2011) ("procedures for resolving disputes short of trial in the public courts")

appraisal provision in insurance policies is presumed by a majority of jurisdictions to be valid and is given a liberal interpretation."); *see also Andres Trucking*, 2018 COA 144, ¶ 52, 488 P.3d 425, 434 ("We are certainly in no position to second-guess the mathematical process adopted by an umpire whose competence and impartiality were never challenged. That is why we require that '[p]arties, after having selected their own judges … be bound by the result.'") (quoting *Wilson v. Wilson*, 18 Colo. 615, 620, 34 P. 175, 177 (1893)).

"The appraisal award issued under an insurance policy is binding so long as the appraisers (including the umpire) have performed the duties required of them by the policy." *Andres Trucking Co. v. United Fire & Cas. Co.*, 2018 COA 144, ¶ 49, 488 P.3d 425, 433-34 (Colo. App. 2018) (citation omitted). "The burden of demonstrating that the appraised loss amount should be set aside falls on the party challenging it." *Id.*; *see also Skinner v. Davison, Inc.*, 351 P.2d 872, 876 (Colo. 1960) ("As to the burden of proof, it is said … that the party who bases his claim on the report or finding has the burden of proving the validity of the awards from the standpoint of patent defects and once this is accepted the burden shifts to the party who is attacking the finding."). Appraisal awards are not to be set aside "except upon clear and convincing evidence of fraud, gross mistake, misconduct of the appraisers, or their failure to perform the duties committed to them by the agreement of submission." *Aetna Ins. Co. v. Murray*, 66 F.2d 289, 290 (10th Cir. 1933) (citing two decisions from the 8th Circuit).

Imbued in the appraisal panels' mandate to determine the "amount of loss," is also the ability to determine causation. *Bonbeck Parker, LLC v. Travelers Indemnity Company*, 14 F.4th 1169, 1178 (10th Cir. 2021) ("We therefore conclude that the Colorado Supreme Court, if faced with the issue, would join these courts in recognizing that in the insurance context, the ordinary meaning of the

phrase 'amount of loss' encompasses causation.'"). Legal determinations "including regarding coverage," are outside of the scope of the appraisal process. *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1104 (D. Colo. 2015).

### C. Defendant Does Not Have Clear and Convincing Evidence to Support Overturning the Appraisal Award

Here, there is an enforceable Appraisal Award. SUF ¶ 11, **Exhibit 6**. The appraisal provision in the Policy states: "[t]he appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss." Policy, **Exhibit 1**, at 24. The Appraisal Award states that the amount of the loss is $157,141.19. It is agreed to and signed by two members of the appraisal panel. It has no patent defects. *See Skinner*, 351 P.2d at 876 ("As to the burden of proof, it is said in 3 Am. Jur., *Arbitration and Award*, § 165, that the party who bases his claim on the report or finding has the burden of proving the validity of the awards from the standpoint of patent defects and once this is accepted the burden shifts to the party who is attacking the finding."). Travelers conceded in its Rule 30(b)(6) deposition that "[t]here's two signed appraisers on [the Appraisal Award]. There's two people that had signed it: The appraiser and the umpire. So that's what the award was set off, based off the appraisal." Transcript of Travelers' Designated Representative, **Exhibit 9**, 80:4-7. The burden of showing that the Appraisal Award ought to be overturned therefore falls on Defendant at trial.

Defendant will be unable to produce clear and convincing evidence of fraud, gross mistake, misconduct of the appraisers, or failure to perform the duties required under the Policy. *See Aetna Ins.*

*Co.*, 66 F.2d at 290 ("the awards of such appraisers are presumptively correct, and should not be set aside except upon clear and convincing evidence of fraud, gross mistake, misconduct of the appraisers, or their failure to perform the duties committed to them by the agreement of submission."). There is nothing in the record to support such a position. Discovery is now closed. Defendant did not take any depositions in this matter. In addition to Travelers' designated representatives, Plaintiffs deposed Umpire McGowan. Umpire McGowan did not state anything to indicate that fraud, gross mistake, misconduct, or failure to perform the appraisal duties occurred. Travelers will be unable to produce evidence sufficient to attack the validity of the Appraisal Award, particularly given the "clear and convincing" standard that applies.

### D. The Appraisal Panel Had Authority to Determine the Amount of the Loss

Travelers' main reasons for declining to pay the full value of the appraisal award appear to be that it disagrees that the appraisal panel had the authority to determine causation, and that it disagrees that the appraisal panel determined the cause of the loss to be hail on May 8, 2017. SUF ¶ 19.

The appraisal panel here had the authority to determine causation, as mandated by Tenth Circuit precedent. This case shares a similar fact-pattern with that of a recent Tenth Circuit decision, *Bonbeck v. Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169 (10th Cir. 2021). In *Bonbeck*, a hailstorm damaged the insured's buildings. The insured contended that the roofs were damaged by hail and required replacement. *Id*. at 1173. The insurer disagreed that hail damaged the roof and asserted that the roof was damaged by wear and tear, deterioration and improper installation. *Id*. The insured invoked the policy's appraisal provision. *Id*. The insurer only agreed to go to appraisal under certain conditions. In particular, the insurer wanted to require that the appraisers distinguish between

"disputed and undisputed damages," with the latter being "those that it already agreed resulted from the hailstorm." *Id*.

The insured rejected the insurer's provisos and the insurer proceeded to file suit against the insured seeking a declaration that the policy precluded appraisers from determining causation issues—i.e., whether or not the roof was damaged by the subject hailstorm. On summary judgment, the district court sided with the insured "concluding that the appraisal provision authorizes the [appraisers] to make cause-of-loss determinations." *Id*. at 1174. The main crux of the reasoning is that "causation is an ingredient of loss." *Id*. at 1178. In other words, an appraiser tasked with determining the "amount of loss" is necessarily tasked with determining causation.

On appeal, the Tenth Circuit affirmed the district court and held, "the Colorado Supreme Court, if faced with the issue, would . . . recogniz[e] that in the insurance context, the ordinary meaning of the phrase 'amount of loss' encompasses causation." *Id*. Given that the defendant in *Bonbeck* is the sister corporation[4] of the Defendant in this case, it is unsurprising that the appraisal provisions of the two policies are nearly identical. In *Bonbeck*, policy's appraisal provision stated:

> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the <u>amount of loss</u>, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, or the <u>amount of loss</u>. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

[4] Defendant's First Amended Answers to Plaintiff's Interrogatories and Requests for Production, **Exhibit 12** at 8 (Travelers' Response to Interrogatory No. 9).

> a. Pay its chosen appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*Bonbeck*, 14 F.4th at 1177 (underline added).

Here, the appraisal provision provides:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> a. Pay its own appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.

[Policy at 24 (underline added)]. Both appraisal provisions use the same phrase, "amount of loss," the interpretation of which was at the heart of the *Bonbeck* decision. There is no functional difference between these two provisions because none of the minute differences in the language do not in any meaningful way affect the meaning of "amount of loss" as it was understood by the *Bonbeck* Court. Yet Travelers is still insisting that it can dispute an appraisal panel's causation determination. In response to

a question of why Travelers did not pay the full value of the actual cash value of the appraisal award after the award was issued, Travelers' designated representative stated:

> Travelers didn't agree with the appraisal as it was determined that during the appraisal that causation of the damage to the roof tiles was in question. And the appraisal took that into consideration, where the -- the appraisal letter that we previously reviewed from Travelers outlined that Travelers reserved its right to dispute any sort of causation. So that's why that payment wasn't issued within 60 days, because there was a dispute as to the outcome of the appraisal with the focus on the causation of the damage to the tile roof.

Transcript of Travelers' Designated Representative, **Exhibit 9**, 81:2-12. Travelers is taking the same position here that it took in *Bonbeck*; that appraisal panels are not imbued with the authority to determine causation. This position has been explicitly rejected by the Tenth Circuit and should not be accepted here.

**E. The Appraisal Panel Determined the Cause of the Loss to be Hail on May 8, 2017**

Travelers may have declined to pay the full value of the appraisal award because it disagrees with the appraisal panel's assessment that the cause of the loss to the Bertisens' roof was hail on May 8, 2017. SUF ¶ 19.

"[L]egal determinations, including issues of coverage, fall outside the scope of the appraisal process, and thus, are subject to judicial review." *Rooftop Restoration & Exteriors, Inc. v. Nautilus Ins. Co.*, Case No. 20-cv-03158-MDB, 2022 WL 4536236, 2022 U.S. Dist. LEXIS 176324, *11-12 (Sept. 28, 2022). However, appraisals are binding as to determinations of fact, including causation. *See*

*Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1154 (D. Colo. 2015) ("appraisal is likely to produce certain binding factual determinations").

The undisputed facts here show that the Appraisal Award determined the amount of loss to be $157,141.19 RCV, with a date of loss of May 8, 2017 and cause of loss of hail. SUF ¶¶ 11-14. The appraisal award (**Exhibit 6**) states on its face that the date of loss is May 8, 2017. Travelers' appraiser did not sign the award, in part because he disagreed that the hail damage necessitated all the roofing tiles needing to be replaced. SUF ¶¶ 5, 6. However, Mr. McClure did agree that hail damaged the roof, including some of the roofing tiles. SUF ¶¶ 5, 6; Email from McClure, **Exhibit 3**.

Even Travelers' own expert witnesses agree that the roof was damaged by hail on May 8, 2017. Defendant's Rule 26 Expert Disclosure, **Exhibit 13**; JS Held Report, **Exhibit 2**; SUF ¶¶ 5, 6. Travelers has disclosed no other expert witness to explain the cause of loss to the Bertisens' roof and thus will be unable to create a genuine issue of fact regarding the cause of the Bertisens' loss at trial. *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 430 (Colo. App. 2006) (In Colorado, expert testimony is required to prove an issue "where the issue does not lie within the ambit of common knowledge of ordinary persons."). Further, the cause of the loss was determined in appraisal and is a binding finding of fact. The cause of the loss is therefore not reasonably in dispute.

Nonetheless, Travelers has not paid for the line item from the appraisal award for roofing tiles, amounting to $57,339.84 RCV. SUF ¶ 18. In fact, Travelers has not paid for a single roofing tile, maintaining its stance that it believes that the cause of loss to the Bertisens' roof was wear and tear. SUF ¶ 20; Transcript of Travelers' Designated Representative, **Exhibit 9**, 66:2-6. Because the appraisal panel determined that the cause of the Bertisens' loss was the hail storm of May 8, 2017, and that the

amount of the loss included $57,339.84 for the roofing tiles, the Appraisal Award must be enforced and Travelers ordered to pay $57,339.84. Travelers may not substitute its findings of fact for that of the appraisal panel, since it will not be able to meet its high burden of proof and show that the Appraisal Award ought to be overturned. Thus, this Court should confirm the Appraisal Award.

## VII. CONCLUSION

There is no genuine issue of material fact as to Defendant's breach of the Policy by failing to pay the full amount of the Appraisal Award. The Appraisal Award set the amount of the loss at $157,141.19. Travelers has not paid $57,339.84 out of the Appraisal Award. The Bertisens respectfully request that this Court confirm the Appraisal Award and enter partial summary judgment in their favor on their breach of contract claim.

Dated: February 6, 2023.

Respectfully submitted,

*s/ Katherine E. Goodrich*

Katherine E. Goodrich
Rodney J. Monheit
MoGo LLC
600 Seventeenth Street
Suite 2800 South
Denver, Colorado 80202
Tel: (303) 357-1317
katie@mogollc.com
rodney@mogollc.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February, 2023, I filed the foregoing **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** using the CM/ECF filing system, which will send notification of the same to the following email addresses:

Brian Devilling
bdevilling@fgppr.com

Matthew Ponzi
mponzi@fgppr.com

*Attorneys for Defendant*

*s/ Katherine Goodrich*
Katherine Goodrich