**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 20-cv-03650-NYW-STV

ANITA BERTISEN, and
JASPER BERTISEN,

      Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter comes before the Court on (1) the Motion for Summary Judgment filed by The Travelers Home and Marine Insurance Company ("Travelers" or "Defendant"), [Doc. 73, filed February 6, 2023]; and (2) the Motion for Partial Summary Judgment filed by Anita Bertisen and Jasper Bertisen (the "Bertisens" or "Plaintiffs") (collectively, the "Motions"), [Doc. 74, filed February 6, 2023]. Upon review of the Motions and corresponding briefing, the entire docket, and applicable legal standards, the Court finds that oral argument would not materially assist in the resolution of these matters. For the reasons set forth herein, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiffs' Motion for Partial Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

## BACKGROUND

This action involves a property insurance coverage dispute arising from a hailstorm on May 8, 2017, at Plaintiffs' residence in Golden, Colorado. After the Parties underwent an appraisal to determine the "amount of loss" from the hailstorm, Travelers declined payment for a portion of

Plaintiffs' claim related to damages to their roof. Thereafter, Plaintiffs initiated this action by filing a Complaint on December 14, 2020. *See* [Doc. 1]. Plaintiffs filed a Supplemental Complaint on March 2, 2022. [Doc. 47]. Together, the Complaint and Supplemental Complaint assert claims for breach of contract, as well as common law bad faith and statutory unreasonable delay/denial of benefits (collectively, the "bad faith" claims). *See* [Doc. 1 at 14–16; Doc. 47 at 6–9]. Following the close of discovery, the Parties filed the instant Motions seeking either full or partial summary judgment. *See* [Doc. 73; Doc. 74; Doc. 83; Doc. 84; Doc. 90; Doc. 91]. The Motions are fully briefed and are thus ripe for disposition.

## LEGAL STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell*

*Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (4th ed. 2022) (explaining that the nonmovant cannot rely on "mere reargument of a party's case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). Further, the Court may consider only admissible evidence, *see Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995), though the evidence need not be in a form that is admissible at trial—only the substance must be admissible at trial. *See Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). For instance, "if evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Indeed, "[t]o determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

Finally, "[c]ross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

## UNDISPUTED MATERIAL FACTS

The Court draws the following undisputed material facts from the record.

## I.    The Policy

1.    Travelers insured the Bertisens' Golden, Colorado residence pursuant to Homeowners Insurance Policy No. 996023717-633-1 (the "Policy"). [Doc. 73-1; Doc. 73 at ¶ 1; Doc. 84 at 3].

2.    The relevant insuring agreement under the Policy states: "We will insure against risk of direct physical loss to property described in Coverages A and B." [Doc. 73-1 at 18; Doc. 73 at ¶ 2; Doc. 84 at 3].

3.    The Policy includes the following relevant provisions regarding payment following a covered loss, as well as the Parties' rights to demand an appraisal regarding any disagreement over the "amount of loss":

> **Loss Payment.**  We will adjust all losses with you.  We will pay you unless some other person is named in the policy or is legally entitled to receive payment.  Loss will be payable 60 days after we receive your proof of loss and:
>
> **a.**    Reach an agreement with you;
>
> **b.**    There is an entry of a final judgment; or
>
> **c.**    There is a filing of an appraisal award with us.
>
> . . .
>
> **Appraisal.**  If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

**a.**   Pay its own appraiser; and

**b.**   Bear the other expenses of the appraisal and umpire equally.

[Doc. 73-1 at 24].

## II.   The Hailstorm at Plaintiffs' Property and Subsequent Investigation by Defendant

4.   On May 8, 2017, Plaintiffs' home was struck by a hailstorm that caused damage to their property.  [Doc. 73 at ¶ 5; Doc. 84 at 3].

5.   After Plaintiffs presented an insurance claim to Travelers, claims handler Bradlee Waddell inspected the property, where he observed damage to metal roof components, a deck, patio furniture, and gutters.  [Doc. 73-2 at 2–3; Doc. 73 at ¶¶ 6–7; Doc. 84 at 3].

6.   Travelers issued payment to Plaintiffs totaling $6,381.04 for building damage, representing an actual cash value of $7,381.04, less the Policy's $1,000 deductible.  [Doc. 73-2 at 3–4; Doc. 73 at ¶ 8; Doc. 84 at 3].

7.   Travelers also issued payment totaling $1,586.68, representing the replacement cost value of personal property damaged by the storm.  [Doc. 73-2 at 3–4; Doc. 73 at ¶ 9; Doc. 84 at 3].

8.   Later, Travelers paid Plaintiffs $1,073.01 for interior damage caused by water leaks, representing the actual cash value of $2,073.01, less the Policy's deductible of $1,000.  [Doc. 73-3 at 11–12; Doc. 73 at ¶ 11; Doc. 84 at 3].

## III.   Plaintiffs' Roof and the Appraisal

9.   Plaintiffs sought payment for damage to their roof tiles.  However, Travelers disputed—and continues to dispute—that the May 8, 2017 hailstorm caused damage to all of Plaintiffs' roof tiles.  *See, e.g.*, [Doc. 73 at ¶¶ 12–14; Doc. 84 at 3–4; Doc. 73-2 at 44].

10.     On November 3, 2017, Travelers adjuster Tracey Barr ("Mr. Barr") reinspected Plaintiffs' property and observed additional damages he attributed to hail, and issued a supplemental payment of $6,605.22, representing the actual cash value of $13,986.26, less the Policy's $1,000 deductible.  [Doc. 73 at ¶ 15; Doc. 84 at 3; Doc. 73-2 at 44].

11.     Plaintiffs continued to dispute Travelers's claim payments and demanded appraisal under the Policy in August 2018.  [Doc. 73 at ¶ 16; Doc. 84 at 3; Doc. 73-2 at 14]; *see also* [Doc. 73-1 at 24].

12.     Travelers responded to Plaintiffs' appraisal demand on September 6, 2018, stating, *inter alia*, that:

> Travelers disagrees that hail physically damaged the roof tiles at your home. Appraisal is appropriate with respect to property components over which the two parties disagree as to the amount of loss, but not with respect to those components over which we disagree as to the coverage, and/or causation.  Travelers is amendable to conducting an appraisal in which the panel sets the amount of loss for both the disputed and undisputed damages, with Travelers reserving the right to challenge issues of coverage and causation.  This approach is consistent with the terms of the Policy's appraisal provision, and allows the parties to reserve all rights to the extent permitted by Colorado Law.
>
> . . .
>
> Travelers proposes conducting the appraisal on the following terms:
>
> - Each appraiser will make separate itemized determinations of (1) the actual cash value and replacement cost of the disputed damage; and (2) the actual cash value and replacement cost of the undisputed damages.
>
> - If the appraisers do not agree on the actual cash value and/or replacement cost with respect to each determination, they will submit the items in dispute to an umpire according to the terms of the Policy.
>
> - The umpire will then make a separate itemized determination of (1) the actual cash value and replacement cost of the disputed damages; and (2) the actual cash value and replacement costs of the undisputed damages.
>
> - All coverage and causation defenses to the disputed damages are reserved for future resolution, and no waiver or estoppel will be implied from this agreement.

. . .

> Please be advised that by agreeing to this demand for appraisal Travelers reserves the right to deny any non-covered portion of the appraisal award.  Further, Travelers does not waive any rights, defenses or contentions available.

[Doc. 73-4 at 1–2; Doc. 73 at ¶¶ 17–19; Doc. 84 at 3, 4].[1]

13.     Plaintiffs designated Tony Trujillo ("Mr. Trujillo") as their appraiser, and Travelers designated independent adjuster Seth McClure ("Mr. McClure") as its appraiser.  [Doc. 73 at ¶ 20; Doc. 84 at 3; Doc. 73-2 at 16].

14.     During the appraisal, Mr. McClure retained J.S. Held, an engineering firm, to evaluate whether any of the concrete tiles on the Bertisens' roof were damaged by the May 8, 2017 hailstorm and required replacement.  [Doc. 74-2 at 1; Doc. 74 at ¶ 5; Doc. 83 at ¶ 5].

15.     J.S. Held observed that the Bertisens' roof "included approximately 191 visible cracked/fractured tiles, a few of which had been previously repaired with adhesive."  [Doc. 74-2 at 1].  It estimated that "approximately 30 percent of the fractures were created on the date of loss [May 8, 2017] and approximately 20 percent were previously cracked and became loose on the date of loss."  [*Id.*].  J.S. Held also estimated that "[a]pproximately 70 percent of the cracked tiles [it] observed were cracked prior to" the subject hailstorm, and "[m]any of these tiles justified replacement prior to May 8, 2017."  [*Id.*].

---

[1] Plaintiffs dispute the language in the letter stating that "Travelers reserves the right to deny any non-covered portion of the appraisal award," [Doc. 73-4 at 2], reasoning that "Travelers cannot reserve a right under the policy that it did not have to begin with" and "Travelers had no right to challenge an appraisal panel's causation determination because that is a factual determination within the purview of appraisal."  [Doc. 84 at 4].  However, Plaintiffs' dispute goes to the merits of their claims, not the language in Travelers's response letter, which cannot legitimately be disputed.

16.     However, J.S. Held noted potential concerns guaranteeing the replacement of Plaintiffs' roof tiles given that the manufacturer "stopped manufacturing roof tiles a few years ago." [*Id.* at 3]. As J.S. Held explained:

> The roof covering at the Bertisen residence was a regular-weight Series 1000 concrete tile manufactured by Oldcastle Westile, Inc. (Westile) of Littleton, Colorado. Historically, Westile stopped manufacturing roof tiles a few years ago. Due to their widespread use throughout Colorado salvaged Westile Series 1000 tiles are easily assessible via Formula Roofing, which, per their website, has "Colorado's most comprehensive collection of historic roof tile…" It is our opinion individual roof tiles at the Bertisen residence can be spot repaired with salvaged Westile Series 1000 roof tiles of the same color/style. Formula Roofing can be reached at 303-600-8696.

[*Id.*].

17.     J.S. Held concluded that "if consideration is made by the insurance policy for . . . repairs related to hailstone impacts, then we estimate replacement of 29 tiles (30 percent of 96 tiles)." [*Id.* at 8].

18.     Based on J.S. Held's report, Mr. McClure provided an estimate of the repair costs for the Bertisens' roof that included removal and replacement of 29 roofing tiles. *See* [Doc. 74-3; Doc. 74-4 at 2; Doc. 74 at ¶ 6; Doc. 83 at ¶ 6].

19.     Mr. McClure and Mr. Trujillo did not agree on the amount of the loss, so they needed to engage an umpire to complete the appraisal pursuant to the terms of the Policy. They were also, however, unable to agree on an umpire. Eventually, on May 19, 2020, a judge appointed Linda McGowan, P.E. ("Ms. McGowan"), as the umpire. [Doc. 74 at ¶ 8; Doc. 83 at ¶ 8].

20.     On September 3, 2020, Ms. McGowan issued a "Summary Letter of Opinions as 'Umpire' for Hail Loss" ("Summary Report"), which stated that she "reviewed information provided" to her from Mr. McClure and Mr. Trujillo and visited the Bertisens' home "to observe existing conditions," during which time she also met with Messrs. McClure and Trujillo. [Doc. 73-6 at 1]. The Summary Report stated in relevant part that:

> It is our opinion that the entirety of the tile roofing should be removed and replaced. We do not believe it reasonably possible to remove and replace only some of the tiles or to remove some areas of tiles (such as the south-facing side only) without compromising the aesthetics of the roofing.

[Doc. 73-6 at 1].  Neither Mr. McClure nor Mr. Trujillo signed or were otherwise parties to the Summary Report.  *See* [*id.* at 2; Doc. 74 at ¶¶ 9–10; Doc. 83 at ¶¶ 9–10]; *see also* [Doc. 73-8 at 25:22–26:3].[2]

21.   The Summary Report attached a line-item summary of which appraiser's numbers Ms. McGowan accepted.  [Doc. 73-6 at 3; Doc. 73 at ¶ 26; Doc. 84 at 3].

22.   Ms. McGowan accepted Mr. Trujillo's estimate of $65,590.71 for removal and replacement of all roof tiles and vents.  [Doc. 73-6 at 3; Doc. 73 at ¶ 27; Doc. 84 at 3].

23.   Ms. McGowan noted in the Summary Report that the basis for the estimate of the replacement cost value was "can't match tile."  [Doc. 73-6 at 3; Doc. 73 at ¶ 28].

## IV.   The Appraisal Award

24.   Ms. McGowan ultimately issued an Appraisal Award in October 2020, which was signed only by Ms. McGowan and Mr. Trujillo, stating in relevant part:

> We, the appraisers and umpire in the above captioned matter have carefully examined the premises referenced in connection with the formal demand for appraisal of the loss.  Based on our appraisal of the loss and value, we have determined the applicable value as follows:
>
> **Total Award Amount**
> **REPLACEMENT COST VALUE: $157,141.19**
> **ACTUAL CASH VALUE: $136,297.85**
>
> The above amounts are subject to all policy conditions in effect.  Any advance payments that may have been made prior to the issuance of this award should be credited from the applicable amounts.  The above amounts are based upon replacement cost and actual cash value calculations valued at the date of loss.

---

[2] When referencing deposition transcripts, the Court cites to the page and line numbers located on the deposition transcripts, as opposed to the page numbers generated by the CM/ECF system.

[Doc. 73-5; Doc. 73 at ¶ 22; Doc. 74 at 3].

25.     On December 14, 2020, Travelers notified Plaintiffs that it was denying payment "for costs associated with a full roof replacement" in the amount of $57,339.84 on the grounds that "the Policy provides no coverage for this damage because it was due to wear and tear." *See* [Doc. 74-11 at 2]; *see also* [Doc. 74 at ¶ 18; Doc. 83 at ¶ 18].  Travelers "dispute[d] that appraisal can resolve the application of coverage limitations and policy exclusions," and maintained that "the appraisal award include[d] repair costs that are not covered and excluded" under the Policy.  [Doc. 74-11 at 2].  As a result, Travelers agreed to issue payment to Plaintiffs in the total amount of $63,385.07, calculated as follows:

> Appraisal Award (RCV): $157,141.19
> Less Depreciation: -$20,843.33
> Actual Cash Value: $136,297.85
> Less Deductible: -$1,000.00
> Less Prior Payments: -$14,572.94
> Less uncovered amounts incl. in award: -$57,339.84

> **Total Payment Due: $63,385.07**

[*Id.* at 2–3]; *see also* [Doc. 73-2 at 26; Doc. 73 at ¶ 30; Doc. 84 at 5].  Travelers explained that the payment was "based on the actual cash value of replacing the damaged items."  [Doc. 74-11 at 3]; *see also* [Doc. 74-9 at 81:2–12 (Travelers's representative testifying that Travelers "didn't agree with the appraisal" and some "payment wasn't issued . . . because there was a dispute as to the outcome of the appraisal with the focus on the causation of the damage to the tile roof")].

26.     In an email on March 16, 2021, Ms. McGowan informed Travelers that she considered "the following factors . . . with [her] determination of the award relative to the roofing":

> 1.  I believe that portions of the roof were damaged by hail on May 8, 2017.
> 2.  I believe that portions of the roof were damaged prior to the hail storm event on May 8, 2017, although the hail may have dislodged some tiles that were previously cracked.

3.  I believe the tiles are no longer manufactured by the original manufacturer, no new tiles from the original manufacturer are available, and no new, identical tiles are manufactured by another manufacturer.

4.  Therefore, it would be necessary to rely upon "salvage" roof tiles to replace the portions of the roof that were damage by hail.  Based on my personal discussion with the salvage yard noted by J.S. Held, there is no assurance that any and/or an adequate number of roof tiles are available to replace the portions of the roof that were damaged by hail.  Further, there is no assurance as to the quality or appearance of the salvage roof tiles as to whether they might perform or look the same as the existing roof tiles.  No evidence was submitted to me to demonstrate that use of salvage tiles would restore the roof to its previous condition prior to the hail storm event on May 8, 2017, which would require a sufficient number of roof tiles of the type, size, profile, quality, color, texture, patina, etc. to replace the portions of the roof that were damaged by hail.

5.  **While some of these factors are related to the aesthetics of the roof, aesthetics are not the sole or even primary reason is [sic] was and remains my opinion that the entirety of the tile roofing should be removed and replaced**.

[Doc. 73-7 at 2; Doc. 73 at ¶ 32; Doc. 84 at 5].

27.     Travelers does not seek to seek to overturn the Appraisal Award.  [Doc. 83 at 14].

## V.     Plaintiffs' Repairs and Payment

28.     Plaintiffs completed repairs to their property for the amount outlined in the Appraisal Award ($157,141.19) and requested reimbursement for depreciation pursuant to the Policy on April 16, 2021.  [Doc. 74-9 at 113:17–114:4; Doc. 74 at ¶ 15; Doc. 83 at ¶ 15].

29.     As of February 6, 2023, Travelers paid $98,801.35 for the loss to the Bertisens' property.  [Doc. 74-10; Doc. 74 at ¶ 17; Doc. 83 at ¶ 17].

30.     Travelers has denied payment of all roofing tiles that were included in the Appraisal Award ($57,339.84).  *See* [Doc. 74-11; Doc. 74 at ¶ 18; Doc. 83 at ¶ 18].

31.     Travelers has not issued any payment for replacement of any tiles on the Bertisens' roof.  [Doc. 74-9 at 104:24–105:2; Doc. 84-5 at 4; Doc. 84 at ¶ 7; Doc. 74 at ¶ 20; Doc. 83 at ¶ 20].[3]

32.     Plaintiffs have not disclosed any expert witnesses in this litigation to opine regarding the cause or date of loss.  [Doc. 73 at ¶ 46; Doc. 84 at 7].

33.     Travelers has disclosed two non-retained expert witnesses: Jeffrey Anderson of J.S. Held, and Mr. McClure.  [Doc. 84-4 at 1–2; Doc. 84 at ¶ 6].

## VI.     The Umpire's Deposition

34.     At her deposition, Ms. McGowan's testified that she did not "view it as [her] role to determine the cause of the loss or the age of the hail damage" at the Bertisens' property.  [Doc. 73-8 at 42:20–24]; *see also* [*id.* at 45:4–9].

35.     Ms. McGowan testified that she did not quantify the number of roof tiles she believed were damaged by hail as opposed to other causes, the number damaged from prior storms before the policy period, or the total number of damaged tiles, regardless of cause.  [*Id.* at 48:18–49:9].  Thus, the amount in the Appraisal Award includes the cost to replace roof tiles that were damaged apart from the May 2017 hailstorm, for instance due to wear and tear and deterioration, or other damage prior to the policy period.  [*Id.* at 48:18–49:14; Doc. 73 at ¶ 36; Doc. 84 at 6].

36.     Ms. McGowan has only examined "maybe five, six" roofs in her career, but never examined a tile roof for hail damage.  [Doc. 73-8 at 43:11–20; Doc. 73 at ¶ 37; Doc. 84 at 3].

---

[3] Travelers disputes this fact on the grounds that "[a]lthough Travelers has not attributed a specific payment to 'roofing tiles,' its initial claim payments included amounts attributable to roof damage."  [Doc. 83 at ¶ 20 (citing Doc. 83-1 at 4)].  But, as Defendant acknowledges, the document it cites does not state anything about payment to repair the roof *tiles*, as opposed to other parts of the Bertisens' roof.  *See* [Doc. 83-1 at 4].  Accordingly, the Court deems this fact undisputed.

37.    Ms. McGowan admitted that she is not an expert in forensic examination of tile roofing.  [Doc. 73-8 at 44:5–7; Doc. 73 at ¶ 38; Doc. 84 at 3].

38.    Ms. McGowan testified that she did not examine broken roof tiles to observe how weathered the breaks appeared or independently evaluate the details of the May 8, 2017 hailstorm, including the size of the hail that fell at the Bertisens' property or any weather reports related to the storm.  [Doc. 73-8 at 44:16–45:9, 46:24–47:6, 48:10–17; Doc. 73 at ¶¶ 40–43; Doc. 84 at 3].

39.    Ms. McGowan testified that she believed "the date of loss was May 8, 2017" because that date was "probably something in the documents that were provided to [her]."  [Doc. 73-8 at 57:7–14; Doc. 73 at ¶ 39; Doc. 84 at 6].

## ANALYSIS

The Parties' Motions seek competing relief, and their briefs share mostly the same arguments.  *See generally* [Doc. 73; Doc. 74; Doc. 83; Doc. 84; Doc. 90; Doc. 91].  For efficiency, the Court analyzes the Motions together, but nevertheless views each side's requests for relief in the light most favorable to the Party opposing such relief.  *See Banner Bank*, 916 F.3d at 1326.

**I.     The Parties' Arguments**

**A.     Causation**

Travelers argues that it did not breach the Policy by failing to pay the Appraisal Award in full.  *See generally* [Doc. 73; Doc. 84; Doc. 91].  Specifically, Travelers argues that the Award "is not binding as to causation or the date of loss, since the appraisal panel did not consider or determine these issues."  [Doc. 73 at 11].  Because it contends it is not obligated by the Appraisal Award as to causation, Travelers further contends that Plaintiffs cannot prove that damage to their roof was caused by the May 8, 2017 hailstorm, reasoning that Plaintiffs have "not disclosed an expert to establish these critical elements" of their breach of contract claim.  [*Id.* at 12–14].  Travelers maintains that Plaintiffs cannot "rely on the appraisal panel's determination" to establish

damages because "the award is not binding as to causation and the date of loss, as discussed above." [*Id.* at 14]. Nor can Plaintiffs rely on Ms. McGowan's "personal opinions regarding the cause and age of damage [because they] are not independently admissible" under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). [*Id.* at 13]. Travelers urges that "[a]bsent a binding appraisal award or any admissible testimony establishing the cause and date of loss, Plaintiffs cannot sustain their burden of proof to establish that the concrete tiles at issue were damaged by the May 8, 2017 hail storm." [*Id.* at 14].

Plaintiffs argue that Travelers cannot show fraud, gross mistake, misconduct of the appraisers, or the Appraisal Panel's failure to perform their duties under the Policy that would justify setting aside the Appraisal Award. *See* [Doc. 74 at 9–12]. Plaintiffs thus seek partial summary judgment "to confirm the appraisal award," thereby "resolving a part of their breach of contract claim" against Defendant. [*Id.* at 1]. Plaintiffs argue that "[t]he Appraisal Award was a binding adjudication of fact as to the cause and the amount of the Bertisens' loss" and Travelers should not be permitted "to substitute its own findings of fact with that of the appraisal panel." [*Id.* at 7]. According to Plaintiffs, the Appraisal Panel "determined that the cause of the Bertisens' loss was the hail storm of May 8, 2017," and "set the amount of the loss at $157,141.19," which "included $57,339.84 for the roofing tiles" that Travelers has not yet paid to Plaintiffs. [*Id.* at 16–17]. Thus, Plaintiffs maintain that Travelers breached the Policy "by not paying [$57,339.84 from the total amount included in] the Appraisal Award." [*Id.* at 8]; *see also* [Doc. 84 at 2 ("The evidence clearly shows [1] that a valid appraisal award was entered by an appraiser and umpire; [2] that the two appraisers determined the cause of the loss was a May 8, 2017 hailstorm; and [3] that Travelers has not paid for the replacement of any roof tiles.")].

Central to the Parties' arguments is *BonBeck Parker, LLC v. Travelers Indemnity Co. of America*, 14 F.4th 1169 (10th Cir. 2021), where the Tenth Circuit "conclude[d] that the Colorado Supreme Court . . . would recognize that the ordinary meaning of the phrase 'amount of loss' encompasses causation issues." *BonBeck*, 14 F.4th at 1181. The court explained that determining "the amount of loss" necessarily involves resolving causation questions because "causation is an ingredient" or essential "component" of "loss." *Id.* at 1177–78; *see also id.* at 1173 ("The disputed policy provision allows either party to request an appraisal on 'the amount of loss,' a phrase with an ordinary meaning in the insurance context that unambiguously encompasses causation disputes like the one here."). The court also noted that, after appraisal, while the insurer may not revisit the appraisal's causation finding, the last sentence of the subject policy—which stated, "[i]f there is an appraisal, we will still retain our right to deny the claim"—permitted the insurer to "deny the claim for a host of other reasons having nothing to do with the cause of the damage." *Id.* at 1177, 1180.

While Travelers acknowledges that the *BonBeck* court determined that appraisal panels **_can_** determine causation [Doc. 83 at 14 (emphasis in original)], it disputes the application of *BonBeck* to the facts of this case, arguing that "*BonBeck* resolved the issue of whether an appraisal panel may determine whether damage was caused by hail or wear and tear, [but] not whether an appraisal panel may determine whether a policy covers replacement of undamaged property to achieve a cosmetic match." [*Id.* at 14–15].

Plaintiffs vigorously disagree, arguing that, pursuant to *BonBeck*, appraisers are authorized to determine "the amount of loss" and "the scope of repair and the cause of the damage are factual questions that are within the purview of an appraiser's duties." [Doc. 84 at 12]. Plaintiffs contend that Travelers "misapprehends the *BonBeck* holding: it does not state that if a cause of loss

determination is made, then it is binding[;] rather, it states that an appraisal panel tasked with determining the 'amount of loss' necessarily considers the cause of the loss."  [*Id.* at 13].

### B.      Cosmetic Matching

Travelers also argues that the Appraisal Award "is not binding" on the grounds that the Appraisal Panel—i.e., the appraisers and the umpire—"awarded full roof replacement to ensure a cosmetic match."  [Doc. 73 at 11].  Relatedly, Travelers argues that it "paid the portion" of the Appraisal Award that is "attributable to property components over which coverage was undisputed," but it "declined to pay the roof replacement portion" of the award because "it was based on a cosmetic matching determination."  [Doc. 83 at 1].  Specifically, Travelers claims that its decision not to pay the entire amount in the Appraisal Award was justified because "an appraisal panel may not determine whether an insured is entitled to coverage for undamaged property to achieve a cosmetic match with replacement property."  [*Id.* at 1–2].  Thus, Travelers maintains that it "had a legitimate basis to decline to pay the remainder of the award," [Doc. 73 at 2], and "did not breach the Policy."  [Doc. 83 at 2].

Plaintiffs acknowledge that questions regarding policy coverage "are legal issues and must be resolved by the courts."  [Doc. 84 at 12].  But they argue that even assuming the Appraisal Panel awarded an amount to cover a full roof replacement due to concerns regarding coverage for cosmetic matching under the Policy, such award was still proper because the Policy indeed covers cosmetic matching.  *See* [*id.* at 2, 13–19; Doc. 90 at 8–10].  Plaintiffs cite Ms. McGowan's explanation that the manufacturer of the specific tiles at issue "ceased production of roofing tiles several years ago," and that "it would have been necessary to rely upon salvaged tiles (which may or may not have been available), from a salvage yard, in order to replace only the damaged tiles."  [Doc. 84 at 14]; *see also* [Doc. 73-7 at 1].  As Ms. McGowan explained in her email:

Based on my personal discussion with the salvage yard noted by J.S. Held, there is no assurance that any and/or an adequate number of roof tiles are available to replace the portions of the roof that were damaged by hail.  Further, there is no assurance as to the quality or appearance of the salvage roof tiles as to whether they might perform or look the same as the existing roof tiles.  No evidence was submitted to me to demonstrate that use of salvage tiles would restore the roof to its previous condition prior to the hail storm event on May 8, 2017, which would require a sufficient number of roof tiles of the type, size, profile, quality, color, texture, patina, etc. to replace the portions of the roof that were damaged by hail.

[Doc. 73-7 at 1].  Based on the foregoing explanations, Plaintiffs contend that "[s]alvaged roof tiles are, by definition, <u>already depreciated</u>, and therefore do not fulfill the [P]olicy's promise of payment for the 'replacement cost without deduction for depreciation.'"  [Doc. 84 at 15]; *see also* [*id.* at 13–19].

Against this backdrop, the Court will first address the Parties' arguments related to Plaintiffs' breach of contract claim, and then turn to Defendant's request for summary judgment as to Plaintiffs' bad faith claim.

## II.    Breach of Contract Claim

Courts "must enforce an insurance policy as written unless the policy language contains an ambiguity."  *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005).  The Policy here provides that a "[l]oss will be payable 60 days after we receive your proof of loss and . . . [t]here is a filing of an appraisal award with us."  [Doc. 73-1 at 24].  The Policy's appraisal provision requires that each appraiser "separately set the amount of loss[,]" and if the appraisers disagree on the amount, "they will submit their differences to the umpire."  [*Id.*].  Any decision agreed on by the umpire and one other appraiser "will set the amount of loss."  [*Id.*].  Although the Policy does not define "amount of loss," the Tenth Circuit has held that the plain meaning of this phrase necessarily includes a determination as to the cause of that loss.  *See BonBeck*, 14 F.4th at 1181 ("[B]ecause we conclude that the Colorado Supreme Court, if faced with the issue, would recognize that the ordinary meaning of the phrase 'amount of loss' encompasses causation issues,

the district court properly interpreted the Policy to conclude that the [Appraisal] Panel could determine the cause of [the insured's] roof damage.").

### A.   Defendant is Not Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claim

The evidence in this case establishes that the Parties underwent appraisal to "set the amount of loss" pursuant to the Policy, and the Appraisal Award was filed with Travelers.  *See* [Doc. 73-1 at 24; Doc. 73-5].  Travelers does not argue that the Parties failed to comply with the Policy's appraisal process or determine the value of Plaintiffs' "amount of loss."  *See* [Doc. 73-1 at 24; Doc. 73 at ¶ 23 ("The Appraisal Award states that the panel determined the 'applicable value' of damage at issue[.]")].  Travelers also acknowledges that, under the Policy, it was required to pay Plaintiffs 60 days after the Appraisal Award was filed.  *Compare* [Doc. 73-1 at 24] *with* [Doc. 73 at 15 ("Travelers paid the actual cash value amount of the appraisal award within sixty days, as required by the Policy.")].  Further, Travelers acknowledges that it did not pay the full amount of the Appraisal Award.  *See generally* [Doc. 73; Doc. 83].

Plaintiffs argue that "by not paying the Appraisal Award, Defendant is in breach."  [Doc. 74 at 8].  Travelers disagrees, countering that it did not breach the Policy because (1) the Appraisal Award "is not binding" on the grounds that the Appraisal Panel "awarded full roof replacement to ensure a cosmetic match"; and (2) the Award "is not binding as to causation or the date of loss, since the appraisal panel did not consider or determine these issues."  [Doc. 73 at 11].  Travelers maintains that it was only required to pay "the undisputed portion of the award *as required under the insurance policy* and had a legitimate basis to decline to pay the remainder of the award."  [*Id.* at 2 (emphasis added)].  Indeed, Travelers contends that it is entitled to summary judgment because Plaintiffs cannot rely upon the Appraisal Award to establish causation by the May 8, 2017

hailstorm and they have not identified an expert to do so in this case. [*Id.* at 10–14]. Respectfully, the Court is not persuaded by Travelers's arguments.

   ***Policy Language.***   Notably, Travelers challenges Plaintiffs' assertion that "by not paying the Appraisal Award, Defendant is in breach," *see* [Doc. 74 at 8], on the grounds that "[t]his simplistic argument ignores the content of the Policy's Appraisal provision." [Doc. 83 at 10]. However, Travelers fails to cite a single provision in the Policy that permitted it to withhold any portion of the Appraisal Award—particularly without the filing of a motion to vacate, correct, or modify the Appraisal Award. *See generally* [Doc. 73; Doc. 83; Doc. 91]. Rather, the Policy states that "[l]oss will be payable 60 days after we receive your proof of loss and . . . [t]here is a filing of an appraisal award with us." [Doc. 73-1 at 24]. As the Colorado Supreme Court has explained, "[i]nsurers seeking to avoid liability 'must do so in clear and unequivocal language and must call such limiting conditions to the attention of the insured.'" *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 307 (Colo. 2003) (quotation omitted). Travelers fails to do so, and the Court finds no such limitations present in the Policy. *Cf. Lindgren v. Safeco Ins. Co. of Am.*, No. 20-cv-02914-WJM-KMT, 2021 WL 5957418, at *4, *4 n.5 (D. Colo. Dec. 16, 2021) (finding that the insurer "fully complied with the terms of the Policy" where "[u]pon the conclusion of the appraisal process—which conclusively set the amount of loss—[the insurer] paid the difference between the appraisal award and its initial payments" and noting that "even if the appraisal provision of the Policy permitted [the insurer] the right to deny the claim for reasons not related to the amount of the appraisal, [the insurer] did not do so").

   ***Causation.***   Next, Travelers seeks summary judgment, in part, on the grounds that the Appraisal Award does not establish causation and that Plaintiffs cannot prove that *any* damage to their roofing tiles was caused by the May 8, 2017 hailstorm because, *inter alia*, they have not

designated any expert to do so.  *See* [Doc. 73 at 12–14]; *see also* [*id.* at 12 (arguing that Plaintiffs have "the burden of proof to establish that the concrete roof tiles sustained damage during the policy period," but cannot "establish these critical elements" without expert testimony)].  This argument, however, is untenable as it essentially renders the Policy's entire appraisal provision meaningless.  *See BonBeck*, 14 F.4th at 1179 ("When interpreting the appraisal provision, we must give effect to both sentences 'so that n[either] will be rendered meaningless.'" (quoting *Cyprus Amax*, 74 P.3d at 307) (alteration in original)); *see also Rooftop Restoration & Exteriors, Inc. v. Nautilus Ins. Co.*, No. 20-cv-03158-MDB, 2022 WL 4536236, at *4 (D. Colo. Sept. 28, 2022) (collecting cases).  That is because under the Policy, the Parties already agreed to a mechanism to resolve their disputes regarding the "amount of loss": the appraisal.

As noted by Plaintiffs, the Policy at issue in this case is substantially similar to the one interpreted by the Tenth Circuit in *BonBeck*.  In *BonBeck*, the Tenth Circuit interpreted the following policy appraisal provision:

> Appraisal
>
> If we and you disagree on the value of the property, the amount of Net Income and operating expense[,] or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property, the amount of Net Income and operating expense[,] or the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.
>
> Each party will:
>
> a.   Pay its chosen appraiser; and
>
> b.   Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

*BonBeck*, 14 F.4th at 1177.  The Policy here states:

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.

Each party will:

a.  Pay its own appraiser; and

b.  Bear the other expenses of the appraisal and umpire equally.

[Doc. 73-1 at 24].  In interpreting the term "amount of loss," after examining the plain meaning of the term, the Tenth Circuit concluded that in the insurance context, the ordinary meaning of the phrase "amount of loss" encompasses causation.  *BonBeck*, 14 F. 4th at 1178–79.  In doing so, the Circuit joined other courts that relied on sources of authority establishing that causation is an integral part of loss for the purposes of insurance; and that the plain meaning of the term "amount of loss" as used in the Travelers's policy necessarily includes causation.  *Id.*

Under its interpretation of the plain language of the Policy, the Tenth Circuit emphasized that after appraisal, the insurer "can't rehash" the "factual finding on how much fail damage occurred" but "can deny the claim for a host of other reasons having nothing to do with the cause of the damage."  *Id.* at 1179–80; *see also Mid-Century Ins. Co. v. Robles*, 271 P.3d 592, 594 (Colo. App. 2011) ("[C]ourts should read the provisions of the policy as a whole, rather than reading them in isolation.  Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage."); *cf. Am. Fam. Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991) ("To benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are

not subject to any other reasonable interpretations.").  By arguing that Plaintiffs cannot establish *any* damage to their roof tiles caused by the May 2017 hailstorm, *see* [Doc. 73 at 12, 14], Travelers seeks to do just that, challenging (1) whether the bulk of the damaged roof tiles were damaged by wear and tear unrelated to the May 8, 2017 hailstorm; (2) Ms. McGowan's determination; and (3) the underlying findings of Travelers's own appraiser, Mr. McClure—who already agreed that the May 8, 2017 hailstorm damaged at least 29 of Plaintiffs' roof tiles.  *See* [Doc. 74 at ¶¶ 5–6; Doc. 83 at ¶¶ 5–6].  Travelers fails to point to any authority that would permit it to challenge causation once an Appraisal Award is issued without moving to vacate, set aside, or modify the Appraisal Award and complying with the applicable standards for such a motion. *Andres Trucking Co. v. United Fire & Cas. Co.*, 488 P.3d 425, 433–34 (Colo. App. 2018).[4]

  **Undisputed Damage.**  Further, it is undisputed that Travelers has not paid to replace *any* roof tiles, despite the fact that Mr. McClure (Travelers's appraiser) agreed that at least *some* of the tiles on Plaintiffs' roof were damaged by the May 8, 2017 hailstorm.  *See* [Doc. 74-9 at 104:3–5; Doc. 84 at 2]; *see also* [Doc. 74-11; Doc. 74 at ¶¶ 5–6, 18; Doc. 83 ¶¶ 5–6, 18].  Travelers points to no contractual provision or legal authority that excuses it from paying for these tiles that were undisputedly damaged by the hailstorm.  *See* [Doc. 74 at ¶¶ 5–6; Doc. 83 at ¶¶ 5–6].  Accordingly, Defendant's Motion for Summary Judgment is **DENIED** with respect to Plaintiffs' breach of contract claim.

  **B.** **Confirmation of the Appraisal Award**

  The Court next turns to analyze whether Plaintiffs are entitled to confirmation of the Appraisal Award and summary judgment in their favor on their breach of contract claim.  *See*

---

[4] Thus, this Court need not reach Defendant's argument that it is entitled to summary judgment because Plaintiffs did not designate an expert. *See* [Doc. 73 at 12–13].

[Doc. 74]. "The appraisal award issued under an insurance policy is binding so long as the appraisers (including the umpire) have performed the duties required of them by the policy." *Andres Trucking*, 488 P.3d at 433. Generally, "an appraisal award entered by an umpire may be disregarded only if the award was made without authority or was made as a result of fraud, accident, or mistake." *Id.* at 434. "The burden of demonstrating that the appraised loss amount should be set aside falls on the party challenging it." *Id.*

Similarly, the Colorado Supreme Court "has held that appraisal awards can be binding on the parties as to the amount of loss." *Lindgren*, 2021 WL 5957418, at *4 (citing *Wagner v. Phoenix Ins. Co.*, 348 P.2d 150, 152 (Colo. 1960)). For instance, in *Wagner*, the Colorado Supreme Court agreed with the insurer that an appraisal provision "amounted to an option offered to plaintiffs, and plaintiffs, having chosen to exercise that option, [were therefore] *precluded from any suit* upon the policy and [were] bound by the award of the umpire." 348 P.2d at 152 (emphasis added). The court explained that when the plaintiffs demanded appraisal "to determine the amount of loss," they "irrevocably exercised their option to determine that question as provided by the appraisal clause of the policy." *Id.* "In other words, the party is 'estopped by the appraisal award.'" *Concept Rests., Inc. v. Travelers Indem. Co.*, No. 16-cv-00450-DME-NYW, 2016 WL 8737773, at *2 (D. Colo. Dec. 2, 2016) (quoting *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F. App'x 366, 367 (5th Cir. 2012)); *see also Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp. 3d 1150, 1154 (D. Colo. 2015) (finding that an appraisal results in a "binding factual determination" as to the amount of loss); *Tae Hyung Lim v. Am. Econ. Ins. Co.*, No. 13-cv-02063-CMA-KLM, 2014 WL 1464400, at *3 (D. Colo. Apr. 14, 2014) ("Neither party is permitted to dispute the amount of loss once it has been determined."). In their Motion for Partial Summary Judgment, Plaintiffs request that the Court "confirm the Appraisal Award." [Doc. 74 at 17]. In its

Response, Travelers does not expressly oppose this request; in fact, it makes clear that it "is not seeking to overturn the Appraisal Award."  [Doc. 83 at 14 (emphasis omitted)].

Based on the Court's independent research, there is no express Colorado statute or procedural rule governing the process of confirming an insurance appraisal award in Colorado. The Court notes that some states analyze insurance appraisal issues under statutes governing arbitration, though "[t]here is a difference of opinion as to whether appraisal provisions are to be regarded as 'arbitration agreements' within the meaning of statutes regulating these agreements." *See* 15 Couch on Ins. § 209:16 (collecting cases).  Several courts within the District of Colorado have analogized the appraisal process to the arbitration process.  *See, e.g.*, *Garcia v. State Farm Mut. Fire & Cas. Co.*, No. 20-cv-02480-PAB-MEH, 2021 WL 4439792, at *2 (D. Colo. Sept. 27, 2021) ("Courts in this district have found . . . that the appraisal process is properly considered as an arbitration under the Colorado Uniform Arbitration Act."); *Rooftop Restoration*, 2022 WL 4536236, at *4 ("Given that the policy's appraisal provision binds the parties as to the amount of loss, the Court agrees . . . that the appraisal process, in that regard, is properly characterized as an arbitration under CUAA."); *Laredo Landing Owners Ass'n, Inc. v. Sequoia Ins. Co.*, No. 14-cv-01454-RM-KMT, 2015 WL 3619205, at *2 (D. Colo. June 10, 2015); *but see Summit Park*, 129 F. Supp. 3d at 1153 ("[T]he appraisal process set forth in the policy is not an arbitration under the CUAA.").[5]  The Court is persuaded by this line of cases.  "Although an appraisal process is not on

---

[5] The Court could locate no similar state-court authority.  However, the Court notes that in *Owners Insurance Co. v. Dakota Station II Condominium Ass'n, Inc.*, 443 P.3d 47 (Colo. 2019), the insurance company filed a petition to vacate the umpire's appraisal award "pursuant to section 13-22-223, C.R.S. (2018), of the Colorado Uniform Arbitration Act."  *Dakota Station*, 443 P.3d at 49.  The Colorado Supreme Court did not comment directly as to whether this was the appropriate mechanism to vacate the appraisal award, but after remand, the case continued on the petition to vacate under the CUAA.  *See, e.g.*, *Owners Ins. Co. v. Dakota Station II Condo. Ass'n, Inc.*, 499 P.3d 1069 (Colo. App. 2021) (hearing second appeal in case).

all fours with arbitration," they "are 'rooted in similar policies of economy for the parties and judicial efficiency." *Laredo Landing*, 2015 WL 3619205, at *2 (quoting *City & Cnty. of Denver v. Dist. Ct.*, 939 P.2d 1353, 1363 (Colo. 1997)). And because there are no other guiding rules or statutes governing the process of challenging or confirming an appraisal award, the Court looks to the Colorado Uniform Arbitration Act ("CUAA") to establish a procedural framework to review the Appraisal Award.

Under the CUAA, after an award—here, an appraisal award—is entered, a party may move to either modify or correct the appraisal award, *see* Colo. Rev. Stat. § 13-22-224, or may move to vacate the appraisal award on a number of bases, including that the appraiser exceeded her authority. *Id.* § 13-22-223(1)(d), (2). A party may also move to confirm the appraisal award. *See id.* § 13-22-222. In the event a motion to confirm the award is filed, "the court *shall issue* a confirming order unless the award is modified or corrected pursuant to section 13-22-220 or 13-22-224 or is vacated pursuant to section 13-22-223." *Id.* (emphasis added). The confirmation of an appraisal award is not discretionary; the statute's mandatory language means that if the Court does not vacate or modify the appraisal award, it *must* confirm the award. *See Judd Const. Co. v. Evans Joint Venture*, 642 P.2d 922, 925 (Colo. 1982) ("[T]he issues before a court in a confirmation proceeding are limited to a consideration of whether grounds exist to vacate, modify, or correct the award under the provisions of the Arbitration Act. In the absence of such grounds, the language of the Arbitration Act is mandatory: 'the court shall confirm' the award.").

Although Travelers contends that it is "not bound by the appraisal panel's coverage determination on the cosmetic matching issue," [Doc. 83 at 12], and that the Appraisal Award is "not binding," [Doc. 73 at 11], it did not move to modify, correct, or vacate the appraisal award and, as discussed above, has disclaimed any intention to do so. *See* [Doc. 83 at 14]. The Court

notes that, under the CUAA, any motion to modify, correct, or vacate an award must be made within 91 days of notice of the award. *See* Colo. Rev. Stat. §§ 13-22-223(2), 13-22-224(1). Thus, to the extent the CUAA applies in this context, Travelers would be out of time to make any such motion.[6]

Although Travelers appears to challenge a *portion* of the Appraisal Award, Travelers has directed the Court to no authority establishing that the Court may ignore portions of or all of the Appraisal Award, or may partially confirm an appraisal award, and has not otherwise directed the Court to any legal authority demonstrating that the Court cannot or should not confirm the Appraisal Award. *See generally* [Doc. 73; Doc. 83]. And the Court has located no authority establishing that this Court could *sua sponte* remand the case for a second appraisal or direct the Appraisal Panel to clarify or amend the Appraisal Award. *See Edward v. Great N. Ins. Co.*, No. 18-cv-01052-WJM-KLM, 2021 WL 307506, at *5 n.5 (D. Colo. Jan. 29, 2021) (citing *Norwich Union Fire Ins. Soc'y v. Cohn*, 68 F.2d 42, 44 (10th Cir. 1933)); *compare Noonan v. Am. Fam. Mut. Ins. Co.*, No. CV 16-3891 (RHK/HB), 2017 WL 10675556, at *2 (D. Minn. Jan. 4, 2017) (the court remanding to the appraisal panel to itemize how much of award was for damage and how much was for cosmetic matching pursuant to Minnesota statute that permitted the court to submit the claim to the appraisal panel to "clarify the award").

For this reason, the Appraisal Award is hereby **CONFIRMED**. *Cf. Rooftop Restoration*, 2022 WL 4536236, at *7 (confirming appraisal award where the challenging party failed to "articulate[] any basis to modify the Appraisal Award, which conclusively establishe[d] the amount of loss resulting from the 2018 hailstorm, and thus,[was] binding on the parties"); *Andres*

---

[6] Travelers makes no such arguments that the Appraisal Award was made as a result of fraud, accident, or mistake in this action, either. *See generally* [Doc. 73; Doc. 83; Doc. 91]

*Trucking*, 488 P.3d at 432 (concluding that "the appraisal award [was] a binding determination of the value of the insured property, and thus [the insurer] may not further litigate that issue").

### C.   Whether Plaintiffs are Entitled to Summary Judgment on their Breach of Contract Claim

In addition to requesting that the Court confirm the Appraisal Award, Plaintiffs also request that the Court enter partial summary judgment in their favor on their breach of contract claim. [Doc. 74 at 17].  Travelers contends that Plaintiffs are not entitled to summary judgment on their breach of contract claim because (1) Travelers did not breach the insurance contract because the appraisal panel cannot determine liability for cosmetic matching, [Doc. 83 at 10]; and (2) Travelers did not breach the insurance contract because the appraisal panel cannot determine causation or the date of loss.  [*Id.* at 13].  The Court addresses Defendant's second argument first.

***Causation and Date of Loss.***  Travelers contends that it did not breach the insurance contract because the appraisal panel "did not determine causation or the date of loss."  [*Id.*]; *see also* [Doc. 73 at 13 (arguing that it is not bound by the Appraisal Award on this same basis)].  In so doing, Travelers attempts to identify disputes of fact, pointing to the umpire's deposition testimony about what the appraisal panel did or did not determine.  *See* [Doc. 83 at 13].  It contends that "the Appraisal Award itself and [the umpire's] testimony make it clear that the award in this case established the *value* of Plaintiff[s'] damage, not its cause or age."  [*Id.*].

Again, the Court is not persuaded given the Tenth Circuit's ruling in *BonBeck* that the plain meaning of the term "amount of loss" necessarily encompasses causation.  In another case involving a nearly identical appraisal provision,[7] another Court in this District granted the plaintiff's motion for partial summary judgment wherein the plaintiff sought a ruling that, as a

---

[7] The provision stated in relevant part, "[a] decision agreed to by any two [appraisers] will be binding."  *Por Boy Stores*, 2022 WL 2064930, at *5.

matter of law, an appraisal award was binding "as to the amount of loss" to the plaintiff's commercial property caused by a hailstorm. *Por Boy Stores, Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-00990-RM-MEH, 2022 WL 2064930, at *5 (D. Colo. June 8, 2022). The court rejected the defendant-insurer's argument that it was "not bound by the appraisal award because the panel umpire failed to perform a thorough investigation into the cause of the damage to [the] Plaintiff's property." *Id.* Relying upon *BonBeck*, the court explained that "once the appraisal panel makes a factual finding on how much hail damage occurred, [the] Defendant 'can't rehash that finding, but it can deny the claim for a host of other reasons having nothing to do with the cause of the damages.'" *Id.* (quoting *BonBeck*, 14 F.4th at 1180). The court noted that the defendant would still be permitted, for example, to "explain to the jury why it handled [the plaintiff's] claim in the way that it did or otherwise contest in court the ultimate coverage question under the Policy as a legal matter." *Id.* The court emphasized, however, that "the appraisal award conclusively established the amount and cause of the loss at issue" and granted the plaintiff's motion. *Id.*

This Court similarly finds that the Appraisal Award in this case is binding as to the amount of loss to the Bertisens' property, including their roof, caused by the May 2017 hailstorm and Travelers cannot avoid Plaintiffs' breach of contract claim by challenging the causation or the date of loss in this action. *Cf. Rooftop Restoration*, 2022 WL 4536236, at *7.

Travelers undisputedly has not paid for the replacement of roof tiles that its own appraiser, Mr. McClure, agreed were damaged by the May 8, 2017 hailstorm. *See* [Doc. 74-9 at 104:3–5; Doc. 74-11; Doc. 74 at ¶¶ 5–6, 18; Doc. 83 ¶¶ 5–6, 18]. And despite Travelers's suggestion that it paid for such tiles, *see* [Doc. 83 at ¶ 20], the source document it cites for that proposition makes no mention of roofing tiles, as opposed to other roofing items such as skylights, flashing, roofing vents, and gutters. *See* [Doc. 83-1 at 4]. Indeed, Travelers's own representative testified that to

his knowledge, as of the time of his deposition on January 23, 2023, J.S. Held had concluded that at least some of the roofing tiles (29, according to J.S. Held) were damaged on May 8, 2017 by the hailstorm, Travelers' appraiser, Mr. McClure agreed that the roof was damaged by that hailstorm; and Travelers had not paid for any roofing tiles.  [Doc. 74-9 at 78:9–19, 104:3–5; Doc. 74-2 at 8].  In addition, because Travelers cannot contest causation as to another 162 damaged roof tiles[8] reflected in the Appraisal Award, the costs associated with these additional tiles should also be included in any damages award for breach of contract.  Thus, there is no genuine issue of material fact that precludes the grant of summary judgment for breach of contract in favor of Plaintiffs for at least 191 roofing tiles.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment is respectfully **GRANTED in part**.

***Cosmetic Matching.***  Travelers also contends that it did not breach the insurance contract because the appraisal panel "cannot determine liability for cosmetic matching."  [Doc. 83 at 10].  As a preliminary matter, the Parties and the Court all agree that an appraiser cannot make coverage determinations.  *See Roof Rehab LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-01863-RMR-SKC, 2022 WL 17976719, at *4 (D. Colo. Sept. 6, 2022) (observing that "the question of 'coverage' deals with whether an event, such as fire, is covered in the first instance, while the question of amount of loss relates to what damage was done by the covered event and the cost to repair that damage") (quotation and alteration marks omitted); *Concept Rests.*, 2016 WL 8737773, at *3 ("Typically, an issue is 'beyond the scope' [of appraisal] if it involves a legal construction of the insurance policy itself (rather than a factual determination), such as whether a particular building is 'covered' under the policy."); *Andres Trucking*, 488 P.3d at 432 (explaining that an

---

[8] J.S. Held observed that the Bertisens' roof "included approximately 191 visible cracked/fractured tiles, a few of which had been previously repaired with adhesive."  [Doc. 74-2 at 1].

appraisal is "an act of estimating" that determines "only the amount of loss" and does not resolve coverage disputes) (quotations omitted); *Fireman's Fund Ins. Co. v. Steele St. Ltd. II*, No. 19-1096, 2022 WL 39392, at *8 (10th Cir. Jan. 5, 2022) ("The appraisal process . . . is intended to produce a binding resolution concerning certain factual issues bearing on coverage. . . .  Any incidental legal determination regarding the ultimate coverage question would be outside the scope of the appraisal process and subject to review.").  Indeed, it is well settled that coverage determinations are legal determinations for the Court to decide.  And this Court agrees that whether or not a line item—in this case, cosmetic tiles—is covered by the Policy is a coverage issue.  *See Rooftop Restoration*, 2022 WL 4536236, at *6.

Taking the record as a whole, this Court cannot determine whether Plaintiffs are entitled to summary judgment as to their breach of contract claim for the Appraisal Award beyond the 191 roofing tiles to include the entirety of the roof.  First, as discussed above, this Court finds no basis not to confirm the Appraisal Award given the lack of challenge by Travelers.  But Plaintiffs direct the Court to no authority that allows this Court to then avoid an identified coverage issue, and they fail to address how this Court should proceed in this unusual procedural circumstance.[9]  *See generally* [Doc. 74].

---

[9] It is also unclear to this Court whether the Appraisal Award even triggers a cosmetic coverage issue.  While Travelers contends that the Appraisal Award includes roof replacement based on the aesthetics of the roofing, [Doc. 83 at 12]; *see also* [*id. at* ¶¶ 24–28], this argument ignores statements acknowledged in Defendant's Motion for Summary Judgment, [Doc. 73 at ¶ 32], made by Ms. McGowan that:

> 5. **While some of these factors are related to the aesthetics of the roof, aesthetics are not the sole or even primary reason is was [sic] and remains my opinion that the entirety of the tile roofing should be removed and replaced.**

[Doc. 73-7 at 1 (emphasis in original)].

Further, notably, and critically, the Parties do not brief the Policy interpretation issues relating to coverage for cosmetic matching in the context of Plaintiffs' Motion for Partial Summary Judgment. In response to *Defendant's Motion for Summary Judgment*, Plaintiffs affirmatively argued that the Policy language providing coverage for "replacement cost without deduction for depreciation" provides coverage for cosmetic matching. *See* [Doc. 84 at 17–18]. But Plaintiffs make no such argument in their own affirmative Motion for Partial Summary Judgment, and this Court is mindful of the Tenth Circuit's admonition that cross-motions for summary judgment are treated as *two individual motions for summary judgment and held to the same standard*, with each motion viewed in the light most favorable to the nonmoving party. *Banner Bank*, 916 F.3d at 1326. Under that standard, this Court respectfully **DENIES** summary judgment with respect to the remainder of Plaintiffs' breach of contract claim.

To be clear, Travelers directs the Court to no specific Policy provision that it contends operates to exclude cosmetic matching coverage *in any of its briefing. See generally* [Doc. 73; Doc. 83; Doc. 91]. Instead, Travelers cites various cases for the proposition that "property insurance policies covering direct physical loss or damage do not cover undamaged property to achieve cosmetic matching." [Doc. 83 at 11–12]. The Court disagrees that these out-of-Circuit cases, which do not apply Colorado law, stand for such a wide-reaching legal proposition. *See Woods Apartments, LLC v. U.S. Fire Ins. Co.*, No. 3:11-cv-00041-H, 2013 WL 3929706, at *2 (W.D. Ky. July 29, 2013) (concluding that, under the terms of the parties' insurance policy, the insurance company was not obligated to replace undamaged tiles where there was no "evidence of the unavailability of comparable or similar material, such that" the insurer could "repair only the damaged portions of the Property without affecting the aesthetic integrity of the Property"); *Magnolia Lane Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 19-24202-CIV, 2022 WL 3566881, at

*3 (S.D. Fla. June 24, 2022) (concluding that "a plain reading of *this particular policy* belies any contention that its terms afford coverage for the replacement of any undamaged property") (emphasis added), *report and recommendation adopted*, 2022 WL 2951650 (S.D. Fla. July 26, 2022); *Advanced Mech. Servs., Inc. v. Auto-Owners Ins. Co.*, No. 3:14-cv-388-DJH-CHL, 2017 WL 3381366, at *8 (W.D. Ky. Aug. 4, 2017) (declining to conclude that the plaintiffs were entitled to replacement of undamaged siding to match replaced siding where the "Plaintiffs fail[ed] to discuss the language of their policy or to offer any evidence that the siding already provided is inadequate"). Coverage determinations are based on the language of the insurance policy—not non-binding cases from out-of-Circuit courts. *See Cary*, 108 P.3d at 290 (explaining that an insurance policy is a contract that is interpreted to promote the intent of the parties and is enforced as written unless it is ambiguous); *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 820 (Colo. 2002) ("[I]nsurance policies are contracts, which must be construed according to their plain meaning and well-settled principles of contract interpretation. . . . [C]lear and unambiguous provisions cannot simply be rewritten by the courts."); *cf. Robles*, 271 P.3d at 595 (explaining that coverage exclusions "must be drafted in clear and specific language" and that "[t]o benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations.") (quotation omitted).[10]

---

[10] The Court notes that in Travelers's written response to Plaintiffs' appraisal demand, Travelers purported to place certain limitations on the appraisal, including that "[a]ppraisal is appropriate with respect to property components over which the two parties disagree as to the amount of loss, but not with respect to those components over which we disagree as to the coverage, and/or causation." [Doc. 73-4 at 1]. Travelers also proposed, *inter alia*, that "[t]he umpire . . . make a separate itemized determination of (1) the actual cash value and replacement cost of the disputed damages; and (2) the actual cash value and replacement costs of the undisputed damages." [*Id.* at 2]. However, apart from referencing this letter in the Motion for Summary Judgment, *see* [Doc. 73 at ¶¶ 17–18], Travelers fails to discuss whether this letter has any bearing on Plaintiffs' claims

Thus, this Court respectfully **DENIES** Plaintiffs' Motion for Partial Summary Judgment insofar as it seeks breach of contract damages beyond the 191 damaged tiles to the entirety of the roof.

## III.   Plaintiffs' Bad Faith Claims

Travelers also argues that Plaintiffs' bad faith claims fail as a matter of law.  *See* [Doc. 73 at 14–15].  Plaintiffs respond, *inter alia*, that their "expert witness outlines several areas, from claim handling to claim settlement, including before the appraisal process, which fell below industry standards."  [Doc. 84 at 19–20].  For support, Plaintiffs cite a 164-page exhibit without a single page citation.  *Compare* [*id.* at 20] *with* [Doc. 86].  It is emphatically "not this [C]ourt's duty to scour without guidance a voluminous record for evidence supporting [a litigant's] theory." *United States v. Lewis*, 594 F.3d 1270, 1275 (10th Cir. 2010).  Indeed, Plaintiffs acknowledge that "[t]his Court is not required to craft an argument" on behalf of the Parties.  [Doc. 90 at 8]; *see also Gross v. Town of Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record]." (alteration in original) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam))).

Even so, the Court finds that Travelers has not sufficiently demonstrated its entitlement to summary judgment on Plaintiffs' bad faith claims.  *See* Fed. R. Civ. P. 56 (stating that the court may grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  First, Travelers argues that "there is no basis for an unreasonable denial of Plaintiffs' claim, as Plaintiffs cannot sustain their burden of proof to establish any additional damage to the concrete tile roofs caused by the

---

and/or the terms of the Policy.  *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself.").

May 8, 2017 storm." [Doc. 73 at 14]. However, as discussed above, there is no dispute that the May 2017 hailstorm damaged at least some of the tiles on Plaintiffs' roof, and Travelers admits that it has not paid for *any* tiles. Accordingly, this argument fails.

Second, Travelers contends that "[w]ith respect to unreasonable delay, the Policy specifically contemplates appraisal as a means of resolving disagreements regarding the amount of loss," and that after the parties engaged in the appraisal process, "Travelers paid the actual cash value amount of the appraisal award within sixty days, as required by the Policy." [*Id.* at 14–15]. Travelers's third argument is similar to its second. It contends that "[w]ith respect to amounts [it] declined to pay following appraisal, the award was not binding to establish covered damage on the roof tiles or any obligation to cover undamaged tiles for cosmetic reasons." [*Id.* at 15]. Travelers argues that "[a]t most, Travelers and Plaintiffs had a legitimate legal dispute regarding coverage and the scope of the appraisal," which "is underscored by the fact that *Bonbeck* had not been issued at the time of the award, and [*Summit Park*] holds unequivocally that cosmetic issues are not within the scope of appraisal." [*Id.*]. Based on the foregoing, Travelers insists that its "actions in withholding payment were reasonable as a matter of law." [*Id.*].

"What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury." *Vaccaro v. Am Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). But "in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* Travelers's arguments are based at least in part on the same unsupported presumption underlying Travelers's arguments regarding Plaintiffs' breach of contract claim—namely, that Travelers was permitted *under the Policy* to withhold payment of any amount from the Appraisal Award after it was filed. *See, e.g.*, [*id.* at 2 (asserting, without any citation, that Defendant "paid the undisputed portion of the award *as required under the insurance*

*policy*") (emphasis added)].   These arguments also ignore that Travelers's own appraiser, Mr. McClure, found that at least some of the tiles on Plaintiffs' roof were damaged by the May 2017 hailstorm, and yet Travelers has not issued payment to repair or replace any of the tiles, among other issues.   And, as discussed above, Travelers has not established that the Policy precludes cosmetic matching.

In sum, Travelers's remaining arguments lack merit.[11]   Accordingly, Travelers's Motion for Summary Judgment is **DENIED**.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)      Defendant's Motion for Summary Judgment [Doc. 73] is **DENIED**;

(2)      Plaintiffs' Motion for Partial Summary Judgment [Doc. 74] is **GRANTED in part and DENIED in part**;

(3)      The Appraisal Award is **CONFIRMED**;

(4)      Summary judgment is **GRANTED in part** in favor of Plaintiffs on their breach of contract claim insofar as the claim is based on the undisputed 191 damaged roof tiles; and

(5)      A telephonic Status Conference is **SET** for **September 19, 2023 at 11:00 A.M.**, at which time the Court will set a Final Pretrial/Trial Preparation Conference and trial

---

[11] For instance, in their Motion for Partial Summary Judgment, Plaintiffs state "[t]o-date, Travelers has not paid for a single roofing tile," citing to the deposition of Travelers's designated representative for support.  *See* [Doc. 74 at ¶ 20; Doc. 74-9 at 118:19–21].  Travelers disputes this fact on the grounds that "[a]lthough Travelers has not attributed a specific payment to 'roofing tiles,' its initial claim payments included amounts attributable to roof damage."  [Doc. 83 at ¶ 20 (citing Doc. 83-1 at 4)].  However, as Plaintiffs correctly point out, although the document referenced by Travelers reflects pricing to fix other portions of the roof (such as the skylight and roof vent), the document states nothing about replacing roofing tiles.  *Compare* [Doc. 90 at 3–4] *with* [Doc. 83-1 at 4].

in this matter.  The Parties shall participate using the following dial-in information:

**888-363-4749; Access Code: 5738976#**.


DATED:  September 8, 2023                    BY THE COURT:

                                             Nina Y. Wang
                                             United States District Judge