# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03650-WJM-STB

ANITA BERTISEN, and
JASPER BERTISEN,

Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,

Defendant.

## DEFENDANT'S MOTION *IN LIMINE*

NOW COMES Defendant, The Travelers Home and Marine Insurance Company ("Travelers"), by and through its attorneys, and moves *in limine* to bar the following evidence:

(1) Testimony from Linda McGowan regarding availability of replacement roof tiles; and

(2) Legal conclusions and unsupported opinions of bad faith expert Damien Arguello.

Each category of evidence and specific opinions at issue are discussed in turn below. Counsel for Defendant has conferred with counsel for Plaintiff, who opposes the relief sought in this motion.

### I.  TESTIMONY OF LINDA MCGOWAN REGARDING AVAILABILITY OF REPLACEMENT TILES

#### A.  INTRODUCTION

This matter involves a dispute arising over hail damage to Plaintiffs' residential property. At issue in this case is whether like kind and quality replacement roof tiles were available for the Plaintiffs' roof. Plaintiffs contend that replacement tiles were unavailable, relying on an appraisal panel's findings regarding the value of damage at issue, and on testimony from umpire Linda McGowan.

However, the appraisal panel was not tasked with determining the availability of replacement tiles, and made no such finding. Moreover, Ms. McGowan lacks the qualifications and the foundation to render an opinion regarding the availability of replacement tiles. Her testimony on this issue must be barred under Federal Rule of Evidence 702.

B. **BACKGROUND**

Plaintiffs insured their Golden, Colorado residence through Travelers under Homeowners Insurance Policy No. 996023717-633-1 ("Policy"). (See Policy, attached hereto as Exhibit "1"). The Policy includes the following Appraisal provision:

> 7. Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
>
> Each party will:
>
> a. Pay its own appraiser; and
>
> b. Bear the other expenses of the appraisal and umpire equally.

(See Ex. 1, p. 24).

On or around May 8, 2017, a hail storm struck Plaintiffs' property. (See Complaint, Doc. 1-1). Following Travelers' claim adjustment, Plaintiffs disputed Travelers' claim payments, and demanded appraisal under the Policy. (See Ex. 2, 8/22/18 Note).

In responding to Plaintiffs' appraisal demand, Travelers wrote, "Travelers disagrees that hail physically damaged the roof tiles at your home." (See response to Appraisal Demand,

attached as Exhibit "3"). Travelers further wrote, "Travelers is amenable to conducting an appraisal in which the panel sets the amount of loss for both the disputed and undisputed damages, with Travelers reserving the right to challenge issues of coverage and causation." (See Ex. 3). Travelers reserved all rights under the Policy and at law, writing, "Travelers reserves the right to deny any non-covered portion of the appraisal award. Further, Travelers does not waive any rights, defenses or contentions available." (See Ex. 3).

Plaintiffs designated Tony Trujillo as their appraiser, and Travelers designated independent adjuster Seth McClure as its appraiser. (See Ex. 2, 10/9/18 Note; See Dkt. 1, para. 73). Linda McGowan, P.E., was appointed as the umpire. (See Dkt. 1, para. 86).

On October 13, 2020, Ms. McGowan issued an appraisal award that she and Mr. Trujillo signed, setting replacement cost value at $157,141.19 and actual cash value at $136,297.85. (See Appraisal Award, attached as Exhibit "4"). The Appraisal Award states as follows:

<u>APPRAISAL AWARD</u>

TO THE PARTIES AT INTEREST:

We, the appraisers and umpire in the above captioned matter have carefully examined the premises referenced above in connection with the formal demand for appraisal of the loss. Based on our appraisal of the loss and value, we have determined the applicable value as follows:

Total Award Amount:

REPLACEMENT COST VALUE: $157,141.19

ACTUAL CASH VALUE: $136,297.85

The above amounts are subject to all policy conditions in effect. Any advance payments that may have been made prior to the issuance of this award should be credited from the applicable amounts. The above amounts are based upon replacement cost and actual cash value calculations valued at the date of loss.

(See Ex. 4).

The Appraisal Award contained no findings regarding cosmetic matching or the availability of replacement tiles. (See Ex. 4). More than a month later, on September 3, 20202, Ms. McGowan also provided a statement of the basis of the appraisal award. ("McGowan Statement") (See McGowan Statement, attached as Exhibit "5").

Ms. McGowan wrote, "It is our opinion that the entirety of the tile roofing should be removed and replaced. We do not believe it reasonably possible to remove and replace only some of the tiles or to remove some areas of tiles (such as the south-facing side only) without compromising the aesthetics of the roofing." (See Ex. 5). The McGowan Statement included a line-item summary of which appraiser's numbers Ms. McGowan accepted. (See Ex. 5). Ms. McGowan accepted Mr. Trujillo's estimate of $65,590.71 for removal and replacement of all roof tiles and vents. (See Ex. 5, Item 10). She wrote that the reason for accepting this number was, "can't match tile." (See Ex. 5).

On March 16, 2021, five months after the award was issued, Ms. McGowan emailed the appraisers and Plaintiffs, offering an opinion that the roof had both new and pre-existing damage, and that it needed to be totally replaced due both to cosmetic matching reasons and the physical damage she observed. (See Email, attached as Exhibit "6").

At deposition, Ms. McGowan admitted that the appraisal panel merely determined the **<u>value</u>** of damage they observed. (See McGowan Deposition, 41:20 – 42:19, attached as Exhibit "7"). The appraisal panel did not quantify the number of roof tiles it believed were damaged by hail as opposed to other causes, the number damaged from prior storms before the policy period, or even the total number of damaged tiles, regardless of cause. Likewise, the award itself is silent as to any findings regarding the availability of replacement tiles.

Ms. McGowan has only examined "maybe five, six" roofs in her career, but never examined a tile roof for hail damage. (See Ex. 7, 43:11-20). She admitted she is not an expert in the forensic examination of tile roofing. (See Ex. 7, 44:5-7). She has never installed or repaired a roof herself. (See Ex. 7, 61:25 – 62:8).

Nonetheless, Plaintiff is purporting to elicit an expert opinion from Ms. McGowan regarding the availability of replacement tiles. However, she bases this opinion merely on a conversation she had with one individual at a single salvage yard. Asked how she determined replacement tiles were unavailable, she testified, "I called a salvage yard who only has used tiles, and I talked to a roofing contractor I have worked with who does tile roofing and talked to them about what tiles were available in this area that could be used . . . ." (See Ex. 7, 34:24 – 35:3). She later identified someone named "Kelsey" as the individual with whom she spoke, testifying as follows:

> My notes are very vague, but I asked about look of new matching with front. So I had a, that was sort of one of my questions. Ridge tiles, could they match with what's on the front? She said, I think it was a she, "Older tiles more prone to damage if left in place." And, "How many west house series 1000 in light gray color flat are available?" And they couldn't tell me. They said, "We'd need to check," and their inventory changed all the time . So those were kind of what my notes reflected.

(See Ex. 7, 39:2-11). Thus, the individual with whom she spoke **did not even confirm the Bertisens' tiles were unavailable.** Ms. McGowan offered no additional bases for her opinions regarding matching tile. (See Ex. 7).

**C.    ARGUMENT**

**1.    The Appraisal Panel Did Not Establish Unavailability of Matching Tiles**

Appraisal panels may make binding determinations of the amount of loss, but may not determine matters beyond the scope of issues submitted. *Viera v. Amica Mut. Ins. Co.*, No. 1:20-

CV-00495-MDB, 2023 WL 1967142, at *4 (D. Colo. Feb. 13, 2023); *Concept Restaurants, Inc. v. Travelers Indem. Co.*, No. 16-CV-00450-DME-NYW, 2016 WL 8737773, at *3 (D. Colo. Dec. 2, 2016). In this case, there is nothing in the Policy or in the parties' submission of the matter to appraisal remotely suggesting that the parties empowered the panel to determine availability of matching tiles. Travelers very clearly agreed to appraise only the "amount of loss," not the availability of replacement tiles. Likewise, the Policy only empowers an appraisal panel to determine the "amount of loss."

Moreover, the appraisal panel did not determine the availability of replacement tiles. The appraisal award is bereft of any such determination, stating only the value of total roof replacement. As Ms. McGowan confirmed at deposition, the appraisal panel viewed its job only as determining the value of damage. (See Ex. 7, 41:20 – 42:19). This is further corroborated by the face of the award, which states, "Based on our appraisal of the loss and value, we have determined the **applicable value** as follows . . . ." (See Ex. 4) (emphasis added).

Ms. McGowan's opinions regarding availability of matching tiles were contained in a statement she issued **individually** well **after** the appraisal award was issued. (See Exs. 5, 6). The Policy provides unequivocally that an individual member of the panel may not bind either party. Rather, "A decision agreed to **by any two** will set the amount of loss." (See Ex. 1, p. 24). Thus, the appraisal panel did not make a binding determination of the availability of matching tiles.

      2.     **Ms. McGowan's Personal Opinion Lacks Foundation under F.R.E. 702**

Absent a binding determination by the appraisal panel, Plaintiffs must offer admissible evidence establishing that matching tiles were unavailable. However, Ms. McGowan's opinions regarding availability of matching tile are not admissible. Under Federal Rule of Evidence 702,

an expert must have "scientific, technical, or other specialized knowledge" regarding the subject on which they testify. Ms. McGowan has only inspected five or six roofs of any type during her career, had never inspected a concrete tile roof, never repaired a tile roof, and admitted she is not an expert in forensic evaluation of damage to concrete tile roofs. Accordingly, she is not qualified to render an opinion regarding the availability of matching tiles.

Moreover, even if she were deemed to be qualified, she has identified no methodology that would support an expert opinion regarding availability of matching tiles. Under Rule 702, expert testimony must be based on sufficient facts or data, the testimony must be the product of reliable principles and methods, and the expert must reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. Under *Daubert,* in assessing reliability, a court must consider whether an expert's methods must have been subject to testing, subject to peer review, have a known rate of error, and are generally accepted. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594, 113 S. Ct. 2786, 2797, 125 L. Ed. 2d 469 (1993).

In this case, Ms. McGowan has identified no methodology that would even make a *Daubert* analysis possible. The basis of her opinion is a single phone call with an individual identified only as "Kelsey", who did not actually confirm whether replacement tiles were available. (See Ex. 7, 39:2-11).

Ms. McGowan's opinion involves no application of expertise, but is based on nothing more than her parroting of inadmissible hearsay from "Kelsey". It is well-settled that an expert may not simply repeat inadmissible hearsay without applying some expertise to the out-of-court statement. As the Tenth Circuit has held, "If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect,

disclosing that out-of-court statement for its substantive truth; the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement." *United States v. Pablo*, 696 F.3d 1280, 1288 (10th Cir. 2012). Under this standard, Ms. McGowan's opinion regarding availability of matching tiles is inadmissible.

II. **LEGAL CONCLUSIONS AND UNSUPPORTED OPINIONS OF DAMIEN ARGUELLO**

Plaintiffs disclosed attorney Damien Arguello as a claims handling expert. His report discloses opinions on the following topics, each discussed below: (1) Thorough, timely, and unbiased investigation; (2) Complete and accurate documentation; (3) Fair evaluation; (4) Good faith negotiation; (5) Regular and prompt communication; (6) Effective claims management; and (7) Unreasonablenes/willfulness. (See Arguello Report, attached as Exhibit "8", pp. 21-26). Across all topics, Mr. Arguello offers numerous legal conclusions, coverage interpretations, roof repair opinions, opinions on the availability of matching roof tiles, and unsupported speculative opinions regarding Travelers' conduct. Each section of his report is addressed in turn.

A. **Thorough, Timely and Unbiased Investigation**

Under this heading, Mr. Arguello opines in part as follows:

> Travelers' claims handlers failed to seek all available information. For example, Travelers' adjusters never reviewed the underwriting file to determine the pre-loss condition of the roof. Had they done so, they would have seen there was no documentation of preexisting roof tile cracking or repairs that would've indicated that the unrepaired cracks existed and weren't caused by the May 2017 hailstorm.

(See Ex. 8, p. 21). However, Mr. Arguello is an attorney, not a roofing expert. He is not qualified to opine whether certain roof tile cracks were or were not caused by the hail storm at issue. His CV is attached to his report as Exhibit "B" and reflects no experience, training, or qualifications that would render him competent to testify as to roofing issues. (See Ex. 8, pp. 27-40). To the contrary, Mr. Arguello's career was spent first as a workers compensation and multi-lines

adjuster, and then as a lawyer working on Plaintiffs' bad faith claims. (See Ex. 8, pp. 27-40). Given his lack of experience and qualifications, his roof repair opinions offered under the guide of "thorough, Timely, and Unbiased Investigation" must be barred.

Mr. Arguello goes on to attack Travelers' reliance on a consultant from JS Held, opining that the company is "generally reputed to be biased in favor of insurers." Mr. Arguello fails to identify the particular consultant by name, and clearly lacks foundation to testify as to another party's bias. Moreover, a witness may not directly opine on another witness's credibility. *Equal Emp. Opportunity Comm'n v. W. Distrib. Co.*, 643 F. Supp. 3d 1205, 1219–20 (D. Colo. 2022). Mr. Arguello's opinion regarding JS Held's reputation must be barred.

Mr. Arguello then ventures back into the field of roof repair, criticizing Travelers for only "allow[ing] for removing and reinstalling tiles existing tiles to allow access for new gutters and soft metal components." (See Ex. 8, p. 21). Again, Mr. Arguello is not a roofing expert. His purported opinions regarding bad faith may not be based on unsupported beliefs regarding the feasibility of roof repair methods. Again, his roof repair opinions offered under the guide of "thorough, Timely, and Unbiased Investigation" must be barred.

Mr. Arguello next criticizes Travelers for delays during the appraisal process. His report states as follows:

> Turning to the appraisal, Travelers' appraiser delayed inspection of the property for about six months, claiming snow prevented such an inspection. I haven't verified weather records for Fall 2018 to Spring 2019, but generally the Denver metro area experiences numerous warm, dry days in the fall and winter, during which snow melts entirely from roofs. My recollection is that this time period wasn't different than the norm. Given these facts, this seems like an unreasonably delayed investigation/appraisal.

(See Ex. 8, p. 22).

Mr. Arguello's opinion regarding delays in the appraisal process is inadmissible on numerous bases. First, the court has held in multiple cases that appraisers are not agents of an insurer, since the appraisal process is intended to be an independent determination of the amount of loss. *Church Mutual Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2017 WL 4029589 (D. Colo. Sept. 13, 2017); *Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.,* No. 17-CV-00777-RBJ, 2018 WL 2008853, at *3 (D. Colo. Apr. 30, 2018). Accordingly, delays in the appraisal process may not be imputed to an insurer to support a bad faith claim. *Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co*., No. 17-CV-00777-RBJ, 2018 WL 2008853, at *3 (D. Colo. Apr. 30, 2018).

Second, Mr. Arguello concedes in his opinion that he has no knowledge of the actual cause of alleged appraisal delays. He concedes, "I haven't verified weather records for Fall 2018 to Spring 2019." Thus, his opinion that weather delays were illegitimate has no basis and must be excluded.

Finally, Mr. Arguello faults Travelers for not attributing interior water leaks to the storm at issue, and opening a separate claim for claimed interior damage. Mr. Arguello bases this conclusion on his opinion that "In my experience, interior water damage frequently manifests months or even years after a roof has been compromised." Again, Mr. Arguello is not a roofer or forensic engineer. He is an attorney, who did not even inspect the property at issue. Accordingly, this opinion must be barred.

### B. Complete and Accurate Documentation

Mr. Arguello's opinions regarding file documentation are inadmissible for multiple reasons. First, they are immaterial to whether there was an unreasonable delay or denial on the claim. The standard under CRS §10-3-1115, *et. seq.* is whether an insurer's denial or delay were

unreasonable. Absent any evidence of how an alleged error in documentation caused an unreasonable delay or denial, such evidence is irrelevant under Federal Rule of Evidence 401 and 402.

Second, the "documentation" opinion is another attempt to backdoor inadmissible roof repair opinions. Mr. Arguello opines, "Travelers' claim handlers didn't document the technical or factual basis for concluding that cracks in the lower right corners of tiles were caused by footfalls or mechanical means and not hail. Travelers never considered, let alone documented, the possibility that hail could damage this portion of tiles because it could be a weak spot more susceptible to such damage." (See Ex. 8, p. 23). Again, Mr. Arguello is an attorney, not a roofing expert. His "documentation" opinion amounts to nothing more than a thinly veiled opinion that right corner cracks on Plaintiffs' roof were caused by hail damage, not wear and tear and deterioration. Given his lack of qualifications, his roof repair opinions offered under the guide of "Complete and Accurate Documentation" must be excluded.

  C. **<u>Fair Evaluation</u>**

Under the rubric of "Fair Evaluation", Mr. Arguello again attempts to back door inadmissible roof repair and causation opinions. He concludes that Travelers failed to fairly evaluate Plaintiff's claim because, "[I]ts estimate excluded roof tiles and it leaped to the unfounded conclusion that the interior damage was a separate claim." (See Ex. 8, p. 23). Again, this is a roof repair and forensic causation opinion for which Mr. Arguello has no qualifications to render. It must be excluded.

Mr. Arguello then engages in contractual interpretation, opining, "Travelers failed to fairly interpret the applicable policy language when evaluating the Bertisens' claims." However,

a bad faith expert may not interpret coverage under the policy, as this is the exclusive province of the court. *Girard Offs., LLC v. Am. Zurich Ins. Co.*, No. 19-CV-03590-PAB-MEH, 2022 WL 4467240, at *4 (D. Colo. Sept. 26, 2022). Specifically, Mr. Arguello opines (1) that cracks in the tiles should have been covered, even if they were damaged by causes other than the hail storm at issue; and (2) that Travelers failed to correctly apply the Policy's appraisal provision, since "Colorado courts were breaking in favor of appraisers determining causation." (See Ex. 8, p. 23). These legal conclusions are inadmissible and must be excluded, since bad faith experts may not engage in policy interpretation. *Id.*

### D. Good Faith Negotiation

Under the section titled "Good Faith Negotiation", Mr. Arguello again offers legal conclusions, opining, "[T]he standard since the October 2021 opinion by the Tenth Circuit in *Bonbeck* is to pay appraisals based on the appraisers' determination of causation issues." This is another clear legal opinion outside the permissible scope of expert testimony, and must be excluded.

Mr. Arguello then uses the "Good Faith Negotiation" section of his report to back door additional roofing opinions, including that "the use of salvaged tiles created concerns about the return of the roof to a pre-loss condition consistent with replacement cost coverage, specifically whether the salvaged tiles would fit with existing tiles and the ability to replace only portions of the underlayment. [sic]" (See Ex. 8, p. 24). Again, Mr. Arguello is an attorney, not a roofing contractor. He may not opine regarding the availability of replacement tiles or what was necessary to return the property to a pre-loss condition.

Finally, Mr. Arguello concludes that, based on his suppositions regarding the roof's reparability and his legal interpretation of the *Bonbeck* decision, Travelers "should have sought to negotiate a compromise but failed to do so." (See Ex. 8, p. 24). This opinion is inadmissible not only because it is based on Mr. Arguello's opinions regarding reparability of the roof, availability of replacement tiles, and legal interpretation of the *Bonbeck* decision, but also because it implicates Travelers' efforts to reach a settlement during litigation. The *Bonbeck* decision was issued in October, 2021. This lawsuit was filed December 14, 2020. (See Dkt. 1). This Court has barred similar opinions from Mr. Arguello in other cases, holding that "insurers do not have a duty to negotiate genuinely contested issues after the commencement of adversarial proceedings." *Masters v. Safeco Ins. Co. of Am.*, No. 20-CV-00631-PAB-NRN, 2021 WL 4317112, at *8 (D. Colo. Sept. 23, 2021) (barring Mr. Arguello's opinion that an insurer acted in bad faith by failing to compromise after litigation initiated.). Accordingly, Mr. Arguello's opinions regarding Travelers' purported obligation to compromise its position post-litigation must be barred.

### E.  Regular and Prompt Communication

Under his "Regular and Prompt Communication" section, Mr. Arguello faults Travelers for failing to send a reservation of rights letter "immediately" after its May, 2017 property inspection, and failing to issue a coverage denial letter. (See Ex. 8, p. 24). Mr. Arguello's opinion represents a misapplication of the facts of the case, since Travelers did not deny the claim, but issued payment. Additionally, Mr. Arguello's opinion is bereft of any explanation of how the failure to issue a reservation of rights letter or full denial letter contributed to any unreasonable delay or denial of the claim. These opinions are, therefore, irrelevant and must be barred.

F.  **Effective Claims Management**

In his "Effective Claims Management" section, Mr. Arguello concedes that Travelers internal claim guidelines are "consistent generally with industry standards." (See Ex. 8, p. 25). However, he criticizes Travelers for failing to require management or outside counsel review of partial denial letters. (See Ex. 8, p. 25). His reasoning for this criticism is, "Without management review of partial denials by file handlers or outside counsel, the risk exists that overzealous representatives will unfairly interpret policy provisions and/or the facts in a way that is inconsistent with their intention, industry standards requiring a fair evaluation, and a disregard for the policyholder's rights or the unreasonableness of the insurer's position." (See Ex. 8, p. 25). In other words, without management review, hypothetical claim handlers *might* unfairly interpret policy provisions.

Such speculative opinions are inadmissible. What "may" have, "might" have, or "possibly" motivated an insurer's actions, or according to Mr. Arguello, what may, might, or possibly happen without management review of partial denial letters, is speculative and inadmissible. See e.g. *O'Sullivan v. Geico Cas. Co*., 233 F. Supp. 3d 917, 927 (D. Colo. 2017) (excluding bad faith opinions about what may, might, or possibly have motivated insurer's actions). This opinion must be barred.

Mr. Arguello next opines that "Travelers allowed the policyholder and outside counsel to maintain a rigidly unreasonable position that persists even now, after the appraisal award was issued and should have been paid in full." (See Ex. 8, p. 25). This opinion is nonsensical, as there is no plausible explanation as to how Travelers allowed *Plaintiffs* to "maintain a rigidly unreasonable position." The opinion is also inadmissible because it again is based on a legal conclusion that the appraisal award should have been paid in full. It also inexplicably implicates

unnamed "outside counsel", despite the fact that Mr. Arguello has no access (and cannot have access) to privileged communications between Travelers and its outside counsel. Also, as discussed above, a bad faith claim may not be based on post-litigation conduct of counsel in litigation, absent extraordinary circumstances not present in this case. *Masters*, 2021 WL 4317112, at *8. Accordingly, this opinion must be barred.

### G.      Unreasonableness/Willfulness

Finally, Mr. Arguello offers a series of conclusions that Travelers acted unreasonably and willfully. (See Ex. 8, 26-27). These opinions include that "Travelers knew what it should do and didn't do it," and that "Travelers' claim handling was fraught with unreasonable delays, an unreasonable partial denial of benefits for the roof tile damage, unreasonably forcing the Bertisens to file a second claim and pay a second deductible, and overall recklessly disregarding their rights, compelling them to file this lawsuit to seek full recovery." (See Ex. 8, p. 26). These opinions are inadmissible on numerous bases, and this Court has barred Mr. Arguello from offering nearly identical opinions in other cases.

An opinion that an insurer's conduct "was unreasonable and that defendant acted willfully and recklessly" is inadmissible as a legal conclusion. *Masters v. Safeco Ins. Co. of Am.*, No. 20-CV-00631-PAB-NRN, 2021 WL 4317112, at *10 (D. Colo. Sept. 23, 2021) (barring Mr. Arguello's opinion that an insurer acted "willfully and recklessly"). Such opinions "impermissibly usurp the role of the judge in stating the law and the role of the jury in applying the law to the facts." *Id.* Accordingly, this opinion must be barred.

### III.    CONCLUSION

The appraisal panel in this case did not make a binding determination of the availability of matching replacement tiles. Accordingly, Plaintiff must prove unavailability of tiles through admissible expert testimony. Ms. McGowan's personal opinions regarding availability of matching tiles lacks sufficient foundation under Fed. R. Evid. 702 and therefore, must be barred. Likewise, all speculative opinions, legal conclusions, and roof repair opinions of Damien Arguello must be barred. For these reasons, Travelers respectfully requests that this Court grant its Motion in Limine.

/s/ Brian E. Devilling
BRIAN E. DEVILLING
MATTHEW S. PONZI
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 North LaSalle St., Suite 1400
Chicago, Illinois 60601
(312) 863-5000
Attorneys for Defendant