IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cv-03650-NYW-STV

ANITA BERTISEN, and
JASPER BERTISEN,

    Plaintiffs,

v.

THE TRAVELERS HOME AND MARINE INSURANCE COMPANY,

    Defendant.

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION IN LIMINE**

---

Anita and Jasper Bertisen (together, "Plaintiffs"), through their counsel at MoGo LLC, submit this Response to The Travelers Home And Marine Insurance Company ("Defendant")'s Motion *In Limine* (Doc. 103) and states:

### INTRODUCTION

Travelers' whirligig arguments supporting its denial of insurance coverage comes to a head in its motion *in limine*. At the outset of this insurance claim, the insurer denied coverage for the Bertisens' roof because it did not notice *any* damage to the tiles and that the roof was in "good condition." [Exhibit 1]. Then, Travelers said the tile roof was damaged by "stress wear tear," but not by hail. [Exhibit 2]. Then, after its own engineer determined that 30% of the damaged tiles were from the May 8, 2017 hailstorm, [*See* Doc. 93 at 7], Travelers denied coverage because appraisal panels cannot determine

1

the cause or date of loss. [*See generally* Doc. 73]. Then, Travelers argued that the appraisal panel awarded a full roof replacement due to matching, which it believed was uncovered by the policy and denied coverage on that ground. [*Id*; and *see* Doc. 99]. After having lost on all of these issues, and having *still* not paid a dime for the roof, Travelers has run out of straws to grasp, but presses on with what can only be characterized as "bad faith."

In its motion *in limine*, Travelers seeks to preclude the testimony of Ms. Linda McGowan, the appraisal umpire, as well as Mr. Damian Arguello, the Bertisens' retained expert. With respect to Ms. McGowan, Travelers asserts for the first time in this litigation that the "issue in this case is whether like kind and quality replacement roof tiles were available for the Plaintiffs' roof." [Doc. 103 at 1]. This, of course, is incorrect. Seemingly, the only issue is whether the appraisal panel made "a factual finding that there are no available matching tiles on the market." [Doc. 101 at 19 n.4]. The appraisal panel already made such a finding, and Travelers knows it. That's why Travelers now seeks to prevent the testimony of Linda McGowan, the appraisal umpire, from explaining that she considered the availability of replacement tiles for the Bertisens' roof. The Court should summarily reject Travelers' request.

With respect to Mr. Arguello, Travelers seeks to strike almost all of the analysis section of his opinion, which it attached as Exhibit 8 to its Motion (pages 20-26). [Doc. 103-8]. Although Travelers now takes issue with the bases of Mr. Arguello's opinion, it did not depose him during discovery, and did not raise a timely objection to admissibility under Rule 702. The Bertisens' claims here center on the reasonableness of Travelers'

delays and denials of their covered benefits. Such claims require expert testimony to aide the trier of fact in understanding the industry standard of care, and Mr. Arguello should be permitted to testify consistent with his opinion for the reasons outlined below.

**ARGUMENT**

**I. The Appraisal Panel Established The Unavailability Of Matching Tiles**

Travelers points out that "Ms. McGowan's opinions regarding the availability of matching tiles were contained in a statement she issued **individually** well **after** the appraisal award was issued." [Doc. 103 at 6 (emphasis in original)]. Because "an individual member of the [appraisal] panel may not bind either party," Travelers argues that "the appraisal panel did not make a binding determination of the availability of matching tiles." *Id*. The trouble here is that this particular issue (the availability of replacement tiles) was never at issue before this Court's recent rulings, and so testimony from the other appraiser was not included as evidence in any briefings. Travelers did not even take the deposition of the Bertisens' appraiser. Lest there be any doubt regarding what the appraisal panel found, the Bertisens attach hereto as Exhibit 3 an affidavit from Mr. Tony Trujillo, the Bertisens' appraiser, explaining that he agreed to Ms. McGowan's conclusion regarding the unavailability of a suitable replacement tile. [Exhibit 3]. Therefore, contrary to Travelers' assertion, two of the three members of the appraisal panel agreed as to the unavailability of a replacement roofing tile.

**II. Ms. McGowan's Testimony Is Admissible**

Piggy-backing on its faulty premise that the appraisal panel did not establish the unavailability of a suitable replacement tile, Travelers asserts that the Bertisens "must

3

offer admissible evidence establishing that matching tiles were unavailable." [Doc. 103 at 6]. According to Travelers, the Bertisens cannot offer such evidence through Ms. McGowan because "she is not qualified to render an opinion regarding the availability of matching tiles." [Doc. 103 at 7]. This argument should be summarily rejected given the fact that Mr. Trujillo agreed with her position on the unavailability of matching tiles, and therefore two of the three members of the appraisal panel made a binding determination. [Exhibit 3].

But even if it were true that two of the three members of the appraisal panel did not establish the unavailability of a suitable replacement tile, Travelers argument fails because of a fundamental misunderstanding about who bears the burden of proof. Travelers erroneously believes it is the Bertisens who must offer evidence in order to uphold the appraisal award. As a matter of law, the opposite is true: the burden is on Travelers.

It has long been the law in Colorado that "where parties to a contract designate a party who is authorized to determine questions relating to its execution, and stipulate that his determination shall be final and conclusive, both parties are conclusively bound by his determination of those matters which he is authorized to determine, except in case of fraud, or such gross mistake upon his part that would necessarily imply bad faith, or a failure to exercise an honest judgment." *Empson Packing Co. v. Clawson*, 43 Colo. 188, 192-93, 95 P. 546, 547 (1908). "[T]he party who bases his claim on the report or finding has the burden of proving the validity of the [appraisal] award from the standpoint of patent defects and once it is accepted the burden shifts to the party who is

4

attacking the finding." *Skinner v. Davidson*, 351 P.2d 872, 876 (Colo. 1960) (quoting 3 Am. Jur., Arbitration and Award, § 165); *Andres Trucking Co. v. United Fire & Cas. Co.*, 2018 COA 144, ¶ 49 ("The burden of demonstrating that the appraised loss amount should be set aside falls on the party challenging it.").

The Bertisens have presented a valid appraisal award that, on its face, shows no sign of any patent defect. The burden therefore shifts to Travelers to demonstrate that there was some "manifest mistake" or "failure to perform the duties required of them by the policy." *Andres Trucking Co.*, 2018 COA 144 at ¶ 49. Travelers hasn't produced a shred of evidence of any fraud, bad faith, or gross mistake. Nor as the insurer even articulated a failure by the panel to perform their obligations under the Policy.

Nor is it clear how, if a suitable replacement tile was available, that would have any effect on the validity of the appraisal award. Even assuming as true that a replacement tile was available, this "mistake" by the appraisal panel does not rise to the level necessary to disregard the appraisal award. *See Andres Trucking Co.*, 2018 COA 144, at ¶ 51 ("[W]ithin the area in which they authorized to act, appraisers are 'clothed with a certain degree of discretion with the result that an award will not be set aside merely because the reviewing judge does not agree with the conclusion reached by them.'") (quoting Steven Plitt et al., *Couch on Insurance* § 213:2 (3d ed.)).

The Bertisens do not have to prove as fact that a suitable replacement tile was unavailable; rather, they only need to show that the appraisal panel made a determination as to such replacement tile's availability. Ms. McGowan testified in her deposition that she considered the availability of a suitable replacement—she called the

salvage yard proposed by Travelers' appraiser, Mr. Seth McClure, and from what she learned, she decided those tiles would not be suitable for the Bertisens roof. [Exhibit 4 at 4; *see also* Doc. 103-6 at 1]. Her testimony is relevant, admissible and does not require expert foundation.

### III. Mr. Arguello's Testimony is Admissible

Travelers argues that parts of Plaintiff's claims handling expert's report includes legal conclusions, roof repair opinions, opinions on the availability of matching roof tiles, and speculative opinions regarding Travelers' conduct. Although Travelers presents this Motion as a Motion in Limine, it is more appropriately deemed a motion to exclude expert testimony under F.R.E. 702. The deadline for filing such a motion passed on January 15, 2023, over a year ago (30 days after the rebuttal expert witness disclosure deadline). *See* Doc. 65; Civ. Practice Standard IV.E.1. For this reason alone, this Court should decline to entertain Travelers' motion to exclude Mr. Arguello's testimony.

Under Rule 702, an expert may testify as to their opinion if the expert's specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; the expert's testimony is based on sufficient facts or data; the expert's testimony is based on reliable principles and methods; and the expert has reliably applied the principles and methods to the facts of the case. F.R.E. 702. After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). In the context of an insurance bad faith case, a reliable methodology consists of identifying what the expert knows of insurance industry standards and practices based upon his or

her experience; explaining the facts and evidence the expert reviewed; and opining on the ways the expert believes the insurance company's handling of the plaintiff's claim fell short of the relevant standards. *See O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 925 (D. Colo. 2017).

Travelers has not deposed Mr. Arguello. Travelers' challenges largely go to the weight and not the admissibility of Mr. Arguello's testimony. Mirroring Travelers' motion, the sections contested are addressed in turn below.

### A. Thorough, Timely, and Unbiased Investigation

Travelers raises an objection to Mr. Arguello's statement that Travelers delayed the Bertisens' claim by failing to seek all available information, including by not considering the underwriting file, which is bereft of discussion of preexisting damage or wear and tear to the Bertisens' roof. The underwriting inspection occurred on July 28, 2016, [Exhibit 8 to Defendant's Motion in Limine, Doc. 103-8, at 12 ("Exhibit 8")], less than a year before the May 8, 2017 hailstorm that damaged the Bertisens' home. The notes associated with the underwriting inspection do not indicate any preexisting damage to the Bertisens' roof. *Id.* Mr. Arguello's opinion goes to whether it was reasonable for Travelers to decide that any damage to the Bertisens' roofing tiles was preexisting and caused by long-term wear and tear, without considering the underwriting file.

As Travelers astutely observes, Mr. Arguello is indeed an attorney. Mr. Arguello is also a law professor; and was previously a licensed insurance agent and an instructor on errors and omissions risk management. *Id.* at 28. Mr. Arguello was also a claims

7

manager with the Talbot Agency, Inc., and a claims adjuster for CNA Insurance Companies and Crawford & Company. *Id.* at 30. Mr. Arguello also has experience with underwriting and rating insurance policies. *Id.* Mr. Arguellos' opinion that the claims adjuster should have reviewed the underwriting report is well-supported by his experience, and it is not based on roof repair expertise.

Mr. Arguello's criticism of Travelers for only allowing for removing and reinstalling tiles on the Bertisens' roof is not an opinion regarding proper repair methodology: rather, he is discussing Travelers' failure to conduct a thorough investigation during the adjustment of the Bertisens' claim. *See id.* at 170. Travelers did not investigate the availability of reclaimed tiles, or whether any roofers would actually agree to implement the repairs estimated by Travelers. *Id.* Even though J.S. Held's opinion was that at least some of the Bertisens' tiles were damaged by hail, Travelers did not include replacing *any* roofing tiles in its estimates. *Id.* Expertise in roofing repairs is unnecessary for Mr. Arguello to make cogent opinions that Travelers did not investigate the Bertisens' claim in a thorough, timely, and unbiased manner. He is merely applying Travelers' own expert's conclusions to his claims adjusting expertise.

Travelers also objects to the admissibility of Mr. Arguello's opinion that Travelers did not consider the subsequent water damage to the Bertisens' home as a part of the same hail claim. Looking at Mr. Arguello's statement in context, he discusses how Travelers did not adequately investigate the cause of the interior water damage. [Exhibit 8, at 22]. Mr. Arguello faults Travelers here under a claims adjusting principle: that adjusters should consider all available information, and that Travelers should have

8

therefore "sought information that connected the hailstorm with the interior water damage, instead of immediately concluding that, just because the interior damage appeared later, it wasn't related to the hailstorm." *Id.* This is not related to a roof repair standard, but to how reasonable insurance companies adjust claims.

The Bertisens agree that discussion regarding delays during the appraisal process may be inadmissible, however Mr. Arguello should be permitted to discuss "delays in forming the appraisal panel due to Travelers' appraiser selections." [Exhibit 8, at 18].

### B. Complete and Accurate Documentation

Travelers takes issue with Mr. Arguello's opinion that Travelers did not adequately document its file to indicate its basis for concluding that damage to the Bertisens' roofing tiles was caused by footfall or mechanical means and not hail. This opinion is not a roofing repair opinion. Travelers denied the Bertisens' claim for hail damage to their roof, in part because it decided that right corner cracks on the roofing tiles were not caused by hail but by some other excluded loss. Mr. Arguello's opinion that that conclusion is not adequately supported with documentation in the claim file is admissible under a claims adjustment standard. Under Rule 401, evidence is relevant if it makes a fact that is of consequence to the action more or less probable. Travelers' decision to deny coverage for the Bertisens' roof based on right corner cracks on the roofing tiles, without documentation supporting that conclusion in the file, goes to the heart of whether there was an unreasonable denial of the Bertisens' claim. Mr. Arguello should be permitted to testify to this point before the jury.

### C. Fair Evaluation

Here, Travelers tries to paint Mr. Arguello's opinion that Travelers refused to consider new information supporting that the roof was damaged by hail by separating the interior water damage claim, as "inadmissible roof repair and causation opinions." [Doc. 103, at 11]. This is illogical. Mr. Arguello discusses how if first investigated fairly, a fair evaluation should follow. Since Travelers did not investigate the Bertisens' claim commensurate with adjustment industry standards, "its evaluation was necessarily flawed." [Exhibit 8, at 23].

Mr. Arguello's opinion further is not impermissible legal opinion. Particularly in the insurance industry context, an expert may refer to industry standards and case law without offending the prohibition against an expert instructing the jury on the law. *See, e.g., Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 596 F. Supp. 3d 1260, 1268-69 (D. Colo. 2022) ("Further, referencing industry standards - some of which are derived from case law - does not constitute improper legal-conclusion testimony. An expert witness 'may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible.'" First, regarding cracks in the tiles, Mr. Arguello takes issue with the fact that Travelers did not "properly analyze the applicability of coverage and exclusionary provisions in its file notes. The standard is to explain in the file notes why an exclusion applies to the facts of the claim." [Exhibit 8, at 23]. Mr. Arguello should be permitted to discuss Travelers' failure to adhere to claim adjustment standards when it did not adequately evaluate coverage for the Bertisens' roof. Mr. Arguello also discusses Travelers' failure to fairly apply the Policy's appraisal provision, particularly in

the wake of the *Bonbeck* decision. *See Bonbeck Parker, LLC v. Travelers Indem. Co. of Am.*, 14 F.4th 1169, 1181 (10th Cir. 2021); Exhibit 8, at 23. He states: "Reasonable insurers reverse their positions when they become aware of legal developments that undercut those provisions." Exhibit 8, at 23. Mr. Arguello should be permitted to testify as to the reasonableness of Travelers' adjustment of the Bertisens' loss, including after the *Bonbeck* decision was issued.

### D. Good Faith Negotiation

Travelers states without explaining that Mr. Arguello's opinion that the standard since the *Bonbeck* decision is for insurers to pay appraisal awards based on the appraisers' determination of causation issues, is a legal opinion that must be excluded. However, as discussed above, standard of care experts often cite to case law, and doing so does not render their opinion impermissible instruction on the law.

Mr. Arguello's opinion describes how a reasonable insurance carrier would have attempted to resolve the Bertisens' claim, especially after the *Bonbeck* decision was issued. Exhibit 8, at 23-24. Travelers contends that this is again an opinion based on the repairability of the Bertisens' roof and that it implicates Travelers' efforts to reach a settlement during litigation.

Post-litigation conduct of an insurance carrier is admissible if it passes a Rule 403 balancing test, with emphasis on the probative value of the evidence to be offered. *See Rabin v. Fidelity Nat'l Property & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1116 (D. Colo. 2012). Such evidence is relevant if it shows "a continuation of the same difficulties that preceded the filing of the complaint and [is] relevant as evidence of a pattern of

defendant's bad faith dealings with the plaintiff." *Domokos v. Shelter Mut. Ins. Co.*, Civil Action No. 18-cv-0903-WJM-NRN, 2020 U.S. Dist. LEXIS 29839, *23 (D. Colo. Feb. 21, 2020) (quoting *Dale v. Guarantee Nat'l Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997)). The fact that an attorney, rather than a claims adjuster, may be making coverage decisions or claim payments, is immaterial and such information remains relevant and discoverable. *See Menapace v. Alaska Nat'l Ins. Co.*, Civil Action No. 20-cv-00053-REB-STV, 2020 U.S. Dist. LEXIS 191695, *21 (D. Colo. Oct. 15, 2020) ("where an insurer utilizes an attorney to both handle claims adjusting activities and also to provide legal advice, the communications related to the claims handling functions (such as investigation, gathering and summarizing information, and valuation of the claim) are ordinary business activities of the insurance company typically handled by an adjuster or investigator and thus are not entitled to attorney client privilege").

Travelers' citation to *Masters v. Safeco Ins. Co. of Am.* is out of context. In that matter, the Court confirmed: "An insurer's 'duty of good faith and fair dealing continues unabated during the life of the insurer-insured relationship, including through a lawsuit or arbitration between an insured and the insurer.'" *Masters v. Safeco Ins. Co. of Am.*, Civil Action No. 20-cv-00631-PAB-NRN, 2021 U.S. Dist. LEXIS 181822, *22 (D. Colo. Sept. 23, 2021) (quoting *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)). An insurer's duty to negotiate a settlement may be suspended if both of the following two conditions are met: "(1) a genuine disagreement as to the value of an insured's claim; and (2) the initiation of adversarial proceedings." *Id.* In *Masters*, the Court held that both factors were satisfied, suspending the insurer's duty to

negotiate a settlement. Here, there is no genuine disagreement as to the value of the Bertisens' insurance claim because there is a valid appraisal award, which remains unchallenged by Travelers to this date. [*See* Doc. 93, at 28-29]. In *Masters*, the Court nonetheless permitted Mr. Arguello to "testify, consistent with his expertise in the field of insurance industry standards, that, while defendant's duty to negotiate or settle plaintiff's claim ended once plaintiff filed this lawsuit, defendant's duty of good faith did not." *Masters*, 2021 U.S. Dist. LEXIS 181822, *22.

Here, the Bertisens' complaint was filed on December 14, 2020. Doc. 1. At the time the complaint was filed, the appraisal award had been executed, but Travelers had not yet paid or denied any part of the appraisal award. Doc. 1, ¶¶ 95, 99. On March 2, 2022, the Bertisens sought and obtained leave to supplement the complaint, [Doc. 45] primarily because Travelers issued a reservation of rights letter denying a part of the appraisal award due to a causation dispute, ignored Umpire McGowan's later clarification of the award, and ignored the Tenth Circuit's decision in *Bonbeck*, which issued on October 1, 2021. Supplemental Complaint, Doc. 47.

Travelers continues on the same course of conduct: this Court ordered the "Appraisal Award in this case is binding as to the amount of loss to the Bertisens' property, including their roof, caused by the May 2017 hailstorm . . . . Thus, there is no genuine issue of material fact that precludes the grant of summary judgment for breach of contract in favor of Plaintiffs for at least 191 roofing tiles." Doc. 93, at 28-29. Nonetheless, Travelers still issued no payment for any roofing tiles. Finally, this Court

ordered that matching is covered under the Policy. Doc. 101, at 17. Yet, Travelers still issued no payment for any roofing tiles.

The Bertisens hope that this Court sees through Travelers' transparent attempts at limiting the trier of facts' ability to consider relevant facts so that it may be held accountable for its continuing pattern of refusals to fairly pay the Bertisens' May 8, 2017 insurance claim.

### E. Regular and Prompt Communication

In this section, Mr. Arguello opines that industry standard is to "promptly issue reservation of rights letters anytime a coverage issue appears." [Exhibit 8, at 24]. Mr. Arguello takes issue with the fact that Travelers inspected the roof on May 26, 2017, saw hail damage to the roof generally but allegedly not to the roofing tiles, yet did not issue a reservation of rights letter or explain its denial in writing until after the appraisal award was issued. [Exhibit 8, at 13-14].

Travelers claims that this section does not include any explanation of how the lack of communication resulted in an unreasonable delay or denial of the Bertisens' claim. Mr. Arguello's opinion does discuss the lack of communication on this claim, and a reasonable juror could understand how these communication failures contributed to the unreasonable delays and denials on this claim -- Travelers even closed the Bertisens' hail claim at one point, before ever sending out a denial letter. [*See* Exhibit 8, at 14]. Further, this is an issue that goes to weight and not admissibility of Mr. Arguello's opinion. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 598 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### F. Effective Claims Management

In this section, Mr. Arguello discusses Travelers' internal claims handling standards. Mr. Arguello opines that industry standard is for management to review partial denials. He points to the claim log as showing that there was no "management second-guessing of adjuster decisions, or making suggestions for future handling." [Exhibit 8, at 25]. This is not, as Travelers claims, an impermissible speculative opinion. Rather, when reading in context of the entire opinion, it indicates that Mr. Arguello is of the opinion that Travelers' lack of management review of partial denials contributed to the unreasonable delays and denials in the Bertisens' claim. [*See* Exhibit 8, at 2] (discussing Mr. Arguello's methodology in reviewing the claim).

### G. Unreasonableness/Willfulness

In this section, Mr. Arguello opines that Travelers' conduct on the Bertisens' claim coupled with its internal claims handling guidelines show that Travelers knew what a reasonable insurance company should do, yet declined to follow that course of action. This is not an impermissible legal conclusion. Mr. Arguello is applying the relevant facts to the relevant insurance industry standards, which standard of care experts are generally permitted to do. "An expert's opinion is not 'objectionable just because it embraces an ultimate issue.'" *Masters*, 2021 U.S. Dist. LEXIS 181822, *28 (quoting F.R.E. 704(a)). Mr. Arguello should be permitted to testify that Travelers' internal claims adjusting guidelines generally comport with industry standards, yet that Travelers'

claims handling does not. Such testimony does not interfere with the judge's role as arbiter of the law.

## CONCLUSION

For the forgoing reasons, the Bertisens respectfully request that this Court deny Travelers' motion *in limine*.

DATED this 30th day of January 2024.

Respectfully submitted,

*s/ Rodney J. Monheit*
Katherine E. Goodrich
Rodney J. Monheit
MoGo LLC
600 17th Street
Suite 2800 South
Denver, CO 80202
Tel: (303) 357-1317
katie@mogollc.com
rodney@mogollc.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2024, I filed a true and correct copy of the foregoing with the Court's CM/ECF system, which will send service of the same to the following email addresses:

Brian Devilling
bdevilling@fgppr.com

Matt Ponzi
mponzi@fgppr.com

*Attorneys for Defendant*

*s/ Rodney J. Monheit*
Rodney J. Monheit